Johann August Kujek, Respondent, *v.* Manassah L. Goldman, Impleaded with Katie Kujek, Appellant.

1. Maintenance of Novel Action. The novelty of an action for which no direct precedent can be cited does not of itself warrant the reversal of a judgment, and it will be sustained when it is based upon legal principles clearly applicable to the new state of facts.

2. Recovery of Damages for Marriage Induced by Fraud of Third Party. One who, by falsehood and fraud, induces a man to marry a woman is guilty of a wrong that may be remedied by an action, the amount of damages to be recovered depending upon the circumstances of the particular case.

3. Recovery of Damages for Marriage Induced by Fraud of Third Party. One who, in the belief that a woman is virtuous, is induced to marry her by the false representations of a third party, by whom she is at the time pregnant, may maintain an action for damages against the wrongdoer upon the broad ground of the loss of *consortium*, to which the husband is entitled and of which, by the fraud complained of, he has been deprived.

*Kujek* v. *Goldman*, 9 Misc. Rep. 34, affirmed.

(Argued June 2, 1896; decided October 6, 1896.)

Appeal, by permission, from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order made June 4, 1894, affirming a judgment of the General Term of the City Court of New York, which affirmed a judgment in favor of plaintiff entered upon a verdict.

Prior to January 17th, 1891, the defendant Katie Kujek, then named Katie Moritz, was an unmarried woman employed as a domestic in the family of the defendant Goldman, by whom she had become pregnant. Upon discovering the fact, the defendants, as it is alleged in the complaint, conspired to conceal their disgrace and to induce the plaintiff to marry the said Katie, and to that end represented to him that she was a virtuous and respectable woman, and he, believing the same, did marry her on the day last named. The plaintiff, as it was further alleged, would not have contracted said marriage if he had known the facts. Subsequently, and on July 29th, 1891,

owing to such pregnancy, she gave birth to a child of which said Goldman was the father.

The answer of Goldman was, in substance, a general denial. No answer was served by the other defendant and no judgment was taken against her.

The evidence tended to sustain the allegations of the complaint.

*Wheeler H. Peckham* for appellant. No cause of action was proven, and the motion to dismiss should have been granted. (Cooley on Torts, chap. 1, pp. 3, 4; *Evans* v. *Carrington*, 2 DeG., F. & J. 481; *Reynolds* v. *Reynolds*, 3 Allen, 615; *Montgomery* v. *Montgomery*, 3 Barb. Ch. 132; *Scott* v. *Shufeldt*, 5 Paige, 43; *Crehore* v. *Crehore*, 97 Mass. 330; *Baker* v. *Baker*, 13 Cal. 93.) There was no proof of damage. (*Withee* v. *Brooks*, 65 Maine, 14; *Price* v. *Price*, 75 N. Y. 244.) The plaintiff has but one remedy, if any — the annulment of the marriage. (*Montgomery* v. *Montgomery*, 3 Barb. Ch. 132; Cooley on Torts [2d ed.], 238, 279; *Freethy* v. *Freethy*, 42 Barb. 641; *Longendyke* v. *Longendyke*, 44 Barb. 366; *Wellington* v. *Small*, 3 Cush. 145; *Parker* v. *Huntington*, 2 Gray, 124; *Brown* v. *Matheson*, 14 Allen, 499.)

*August P. Wagener* for respondent. Plaintiff can maintain this action. (*Piper* v. *Hoard*, 107 N. Y. 73; *Neville* v. *Wilkinson*, 1 Brown Ch. 543; *Roberts* v. *Roberts*, 3 P. Wms. 66; *Harvey* v. *Ashley*, 3 Atk. 607; *Montefiori* v. *Montefiori*, 1 Wm. Black. 363.)

VANN, J. The verdict of the jury has established as the facts of this case, beyond our power to review, that the plaintiff married Katie Moritz in the belief that she was a virtuous girl, induced by the representations of the defendant to that effect, when, in fact, she was at the time pregnant by the defendant himself. The case was submitted to the jury upon the theory that if Goldman, knowing that Katie was unchaste, by false representations that she was virtuous induced the plaintiff to marry her, he was entitled to recover damages,

23

and the jury found a verdict in his favor for $2,000. While no precedent is cited for such an action, it does not follow that there is no remedy for the wrong, because every form of action when brought for the first time must have been without a precedent to support it. Courts sometimes of necessity abandon their search for precedents and yet sustain a recovery upon legal principles clearly applicable to the new state of facts, although there was no direct precedent for it, because there had never been an occasion to make one. In remote times, when actions were so carefully classified that a mistake in name was generally fatal to the case, a form of remedy was devised by the courts to cover new wrongs as they might occur so as to prevent a failure of justice. This was called an "action on the case," which was employed where the right to sue resulted from the peculiar circumstances of the case and for which the other forms of action gave no remedy. (26 Am. & Eng. Encyc. of Law, 694.) For instance, the action for enticing away a man's wife, now well established, was at first earnestly resisted upon the ground that no such action had ever been brought. In an early case the court answered this position by saying: "The first general objection is that there is no precedent of any such action as this, and that, therefore, it will not lie; and the objection is founded on Lit. s. 108 and Co. Lit. 81, b., and several other books. But this general rule is not applicable to the present case; it would be if there had been no special action on the case before. A special action on the case was introduced for this reason, that the law will never suffer an injury and a damage without a remedy, but there must be new facts in every special action on the case." (*Winsmore* v. *Greenbank*, Willes, 577, 580.) As was recently said by this court in an action then without precedent: "If the most that can be said is that the case is novel and is not brought plainly within the limits of some adjudged case, we think such fact not enough to call for a reversal of the judgment." (*Piper* v. *Hoard*, 107 N. Y. 73, 76.)

The question, therefore, is not whether there is any prece-

dent for the action, but whether the defendant inflicted such a wrong upon the plaintiff as resulted in lawful damages. The defendant, by deceit, induced the plaintiff to enter into a marriage contract whereby he assumed certain obligations and became entitled to certain rights. Among the obligations assumed was the duty of supporting his wife in sickness and in health, and he discharged this obligation by expending money to fit up rooms for housekeeping, in keeping house with his wife and caring for her during confinement, when she bore a child not to him but to the defendant. Among the rights acquired was the right to his wife's services, companionship and society. By the fraudulent conduct of the defendant, he was not only compelled to expend money to support a woman whom he would not otherwise have married, but was also deprived of her services while she was in child-bed. He thus sustained actual damages to some extent, and as the wrong involved not only malice but moral turpitude also, in accordance with the analogies of the law upon the subject, the jury had the right to make the damages exemplary. By thus applying well-settled principles upon which somewhat similar actions are founded, this action can be sustained, because there was a wrongful act in the fraud, that was followed by lawful damages in the loss of money and services. The fact that the corruption of the plaintiff's wife was before he married her does not affect the right of action, as the wrong done to him was not by her defilement, but by the representation of the defendant that she was pure when he knew that she was impure, in order to bring about the marriage. It is difficult to see why a fraud, which, if practiced with reference to a contract relating to property merely, would support an action, should not be given the same effect when it involves a contract affecting not only property rights, but also the most sacred relation of life. Fraudulent representations with reference to the amount of property belonging to either party to a proposed marriage, made by a third person for the purpose of bringing about the marriage, are held to constitute an actionable wrong and the

usual remedy is to require the person guilty of the fraud to make his representations good. (*Piper* v. *Hoard, supra; Montefiori* v. *Montefiori*, 1 Wm. Blackstone, 363; Atherly on Marriage Settlements, 484.) In such cases the injury is more tangible and the measure of damages more readily applied than in the case before us, but both rest upon the principle that he who by falsehood and fraud induces a man to marry a woman, is guilty of a wrong that may be remedied by an action, the amount of damages to be recovered depending upon the circumstances of the particular case.

We have thus far considered the right of action as resting upon some pecuniary loss, which, although, trifling in amount, may be recovered as a matter of right, leaving it to the jury in their sound discretion, as in a case for the seduction of a child or servant, to amplify the damages by way of punishment and example. We think, however, that the action can be maintained upon a broader and more satisfactory ground, and that is the loss of *consortium*, or the right of the husband to the conjugal fellowship and society of his wife. The loss of *consortium* through the misconduct of a third person has long been held an actionable injury, without proof of any pecuniary loss. (*Bennett* v. *Bennett*, 116 N. Y. 584; *Hutcheson* v. *Peck*, 5 Johns. 196; *Hermance* v. *James*, 32 How. Pr. 142.) As has been well said by a recent writer: "To entice away, or corrupt the mind and affection of one's consort is a civil wrong, for which the offender is liable to the injured husband or wife. The gist of the action is not in the loss of assistance, but the loss of *consortium* of the wife or husband, under which term are usually included the person's affection, society or aid." (Bigelow on Torts, 153.) The damages are caused by the wrongful deprivation of that to which the husband or wife is entitled by virtue of the marriage contract. They rest upon the loss of a right which the marriage relation gives and of which it is an essential feature. Whether that right is wrongfully taken away after it is acquired, or the person entitled to it is wrongfully prevented from acquiring it does not change the effect or lessen the injury. While the plain-

tiff has not been actually deprived of the society of his wife, he has been deprived of that which made her society of any value, the same as if she had been seduced after marriage. Although the formal right to *consortium* may remain, the substance has been taken away. In other words, when he entered into the marriage relation he was entitled to the company of a virtuous woman, yet through the fraud of the defendant that right never came to him. He has never enjoyed the chief benefit springing from the contract of marriage, which is the comfort, founded upon affection and respect, derived from conjugal society. If the defendant had deprived the plaintiff of his right to *consortium* after marriage, the law would have afforded a remedy by the award of damages. Yet the plaintiff, through the fault of the defendant, has suffered a loss of the same nature and to the same extent, except that instead of losing what he once had, he has been prevented from getting it when he was entitled to it. This is a difference in form only and is without substantial foundation. The injury, although effected by fraud before marriage instead of by seduction after marriage, was the same, and why should not the remedy be the same? While the method of inflicting the injury is not the same, as it is tortious in character, has substantially the same effect and causes damages of the same nature and to the same extent, why should damages be recovered in the one case if not in the other? Where false representations are willfully made as to a material fact for the purpose of inducing another to act upon them and he does so act to his injury, he may recover such damages as proximately result from the deception. The representations in this case, as the jury has found, were made to promote the marriage and they were false as the defendant well knew. They were clearly material. The plaintiff acted upon them and was thereby injured, for he made a contract entitling him to certain rights, which he has not received and which the defendant knew he could never receive. Here are all the elements of a good cause of action founded upon fraud resulting in

damage. The contract induced by the fraud was of a peculiar nature, but it was in law simply a contract, conferring certain rights and imposing certain obligations. While it is not agreeable to treat a subject of sacred importance upon this narrow basis, it is necessary to do so, for our law considers marriage in no other light than as a civil contract. If the defendant had induced the plaintiff to enter into any other contract by making false statements of fact, which, if true, would have made the contract more valuable, he would have been liable for all the damages that naturally resulted. If he had induced the very marriage contract under consideration by representing to the plaintiff that he owed his proposed wife a certain sum of money, according to the common law, which entitles the husband to the personal property of his wife, he could have been compelled to make his representations good by the payment of that sum. (*Montefiori* v. *Montefiori, supra; Redman* v. *Redman,* 1 Vern. 348; *Neville* v. *Wilkinson,* 1 Brown's Ch. 543; *Scott* v. *Scott,* 1 Cox's Eq. 378.) These cases, as well as the more important case of *Piper* v. *Hoard* (*supra*), rest upon the principle that fraudulent representations as to the pecuniary condition of one party to a proposed marriage, made by a third person to the other party thereto, in order to promote the marriage, are actionable and authorize the recovery of such damages as may be proved. In this case we have a representation that did not relate to property directly, although it involved rights in the nature of property, but did relate to character, and so vitally that its falsity was destructive of all happiness belonging to the plaintiff by virtue of his marriage. The injury was not merely sentimental, for, as has been shown, it extended to a right which the law recognizes as of pecuniary value, and for the wrongful destruction of which it awards damages.

We think that the facts found warrant the recovery, and, after examining all the exceptions, are of the opinion that the judgment should be affirmed, with costs.

All concur, except Bartlett, J., not voting.

Judgment affirmed.