SEARS *v*. WEGNER.

1. FRAUD—DECEIT — INDUCING ENTRY INTO MARRIAGE RELATION.
   An action for fraud and deceit lies for fraudulently inducing a
   woman to enter into the marriage relation.

2. SAME—PLEADING—DECLARATION—SUFFICIENCY.
   A declaration alleging that defendant told plaintiff he had been
   once married, but that the marriage was void and formed no
   legal impediment to their marriage, and by such representations
   induced her to enter into a secret marriage with him by
   mutual promises, promising to have a public ceremony per-
   formed as soon as he should have the former marriage set
   aside, which he failed to do, and afterwards deserted her and
   her children, the offspring of the relation, and after procur-
   ing a divorce from his former wife married another, the
   former marriage being in fact a legal marriage, states a
   cause of action, though unless the allegation of plaintiff's
   belief in the invalidity of the first marriage is made out
   plaintiff cannot recover.

Error to Wayne; Hosmer, J. Submitted October 24,
1907. (Docket No. 128.) Decided December 10, 1907.

Case by Minnie Sears against Frederick A. Wegner
for fraud and deceit. There was an order sustaining a
demurrer to the declaration, and plaintiff brings error.
Reversed.

*Van Zile & Brownson*, for appellant.
*Dwight C. Rexford*, for appellee.

The court sustained a demurrer to the declaration.
The substance of the declaration is as follows:

On December 24, 1897, plaintiff was an unmarried
woman living in Adrian, engaged in school teaching at
Lenawee Junction, near the city of Adrian. She met
and became acquainted with defendant; that defendant,
at that time fraudulently and maliciously intending to

damage and ruin the plaintiff and bring upon her the pain and suffering of mind and body as well as loss of service and money set out in the declaration, with malicious and fraudulent intent, commenced to pay his attentions to the plaintiff, to become a suitor and endeavored to win her affections, by his regular calls, by protestations of love, and made urgent suit that she should marry him and become his wife. Plaintiff relied upon his representations, believing that he did love her with an ardent, unselfish love. Defendant, pressing his suit, fraudulently and maliciously represented and stated the facts to be that, whereas, he was married, he had not lived with his wife for 10 years; that the marriage was not a valid marriage, but was void; that he could have it set aside at any time, and if she accepted him he would institute proceedings at once, and offered to take plaintiff to his alleged wife and prove that their marriage was void, and could be set aside. The plaintiff believed that his marriage was void and acceded to his importunities.

Defendant, having thus won her confidence and affection, to further carry out his wicked and fraudulent scheme, induced her to go with him to Sandusky, in the State of Ohio, where, on to wit, June 18, 1898, he induced her to enter into formal exchange of promises which he represented would constitute and stand as a marriage between the parties until the void marriage was set aside, when he would have a formal public marriage with plaintiff solemnized. Carrying this out, he induced her to join hands with him and they then exchanged vows, he by words of pledge saying, speaking her name, "Minnie Sears, I take you to be my true and wedded wife, promising to live with and protect you and to be unto you a devoted husband as long as I shall live." And plaintiff repeated a like pledge to be his true and wedded wife as long as she should live. At this time defendant promised that not later than the following December he would have the marriage he represented to be void set aside and a public ceremony of marriage performed. The

defendant insisted and urged that after this ceremony and pledges exchanged between themselves, they were, in fact, married, and from that time their lives would be one,—and importuned plaintiff because of this to enter upon living together as husband and wife, and urged and importuned her to have sexual intercourse with him. Believing his representations and relying upon his promises, and because of the pledges exchanged, she acceded to his importunities and then and there permitted the defendant to have sexual intercourse with her. Because of this they commenced to live together as husband and wife, and continued to so live until defendant deserted her the latter part of 1904, seven years thereafter.

Upon this plaintiff charges that the defendant seduced her and continued to debauch her and have intercourse with her. Defendant induced her to go with him and live with him as his wife in various cities and towns in Michigan, Wisconsin, Illinois, and Ontario, registering their names at hotels as husband and wife, and introducing her as his wife.

By means of these fraudulent and false representations aforesaid, and which were relied upon by the plaintiff, the defendant induced the plaintiff to conceive and bear for him three children, offspring of the seduction, sexual intercourse, and relations aforesaid. Plaintiff bearing and enduring intense sickness and great pain of body and mind in her pregnancy and delivery of said children, born April 15, 1899, October 22, 1900, and December 12, 1903. Plaintiff, during all the time, often urged him to carry out his promise and have the void marriage set aside and have a public ceremony of marriage with her, and he as often promised, but excused the delay, saying he was not in position to carry out the possible order of the court, referring to the money it might cost him.

The plaintiff believed and relied upon the false and fraudulent representations of the defendant and his pledges and importunities, and at divers times and places during the existence of their said relations, at the request

of the defendant, furnished him money to pay his expenses, to wit, the sum of $500, and to wit, from the 18th day of June, 1898, to the 28th day of November, 1905, and during all the time between said dates, at his request, and because of the false representations, she rendered him her constant services in taking care of his household and in bearing, caring for and supporting his children; that the value of such service is $10,000; that his representations and protestations were false, fraudulent, and malicious, to the knowledge of the defendant; that they were made and persisted in with the design and intent upon his part to carry out his wicked and nefarious scheme to seduce and debauch the plaintiff to cause her to believe that she was really then his wife; that he might continue to debauch her and have sexual intercourse with her and cause her to bear children and to expend her time and services in caring for defendant's house, in bringing up and supporting his children, and from time to time, at his request, furnishing him money. That the plaintiff fully believed all of his promises, representations, and protestations to be true, and because of her reliance thereon was induced to keep and perform each and all of the promises and pledges made by her and to do and perform the several acts complained of, and the defendant well knew this; that the defendant has utterly refused and neglected to carry out or keep his promises and obligations; that he procured a divorce from his former wife living in Three Rivers, in the city of Chicago in September, 1904; that, disregarding his promises to plaintiff, he neglected to have a public ceremony performed between himself and plaintiff, but married another woman, one Mary E. Emmons, and utterly deserted the plaintiff and the three children, and now refuses to furnish the plaintiff any means of support for herself and her three children, and has left her and the three children destitute and without the necessities of life; that the three children are of such tender age that the plaintiff, their mother, is obliged to give all of her time to them, and that she has not suf-

ficient time to earn her own or their support; that it will
be a period of 10 years before she will have such time.
The names of the children are: Frederick A. Wegner,
Jr., 6 years old, named by the defendant for himself,
Dora E. Wegner, 5 years old, named by the defendant
for a favorite sister of defendant, then dead, Brandon
D. Wegner, 2 years old.

She alleges damages because of being brought into
public disgrace and humiliation among her relatives,
friends, and neighbors, by reason of great mental suffer-
ing and anxiety, by reason of being deserted entirely un-
provided for, because of great bodily pain and suffering
in bearing three children, by reason of defendant fraudu-
lently obtaining her services rendered defendant for more
than seven years, for money furnished defendant, because
of future burdens put upon her by reason of caring for
the children and by reason of future mental suffering and
disgrace among her friends.

GRANT, J. ( *after stating the facts* ).    The court sus-
tained the demurrer, holding that " the declaration is in
its essence for breach of promise to marry, or seduction,
or both," and that the contract to marry was void as
against public policy.    The learned circuit judge in his
opinion said:

" It would seem that the plaintiff must have under-
stood that the former marriage was not so void as to au-
thorize the defendant to enter into a new contract to
marry."

Even if the declaration were based upon breach of prom-
ise to marry, there is high authority for holding that it
does not lie in the defendant's mouth to plead his inabil-
ity as a defense, provided the plaintiff was in ignorance
of such inability.    *Kelley* v. *Riley*, 106 Mass. 339.    The
court, however, was in error in holding the declaration to
be one for seduction and breach of promise.    It counted
"tort-wise for fraud and deceit."    Such action lies for
fraudulently inducing a woman to enter into the marriage

relation. *Blossom* v. *Barrett,* 37 N. Y. 434; *Morrill* v. *Palmer,* 68 Vt. 1 (33 L. R. A. 411); *Pollock* v. *Sullivan,* 53 Vt. 507.

While it is true that the declaration admits that defendant informed plaintiff that he had once been married, it also alleges that he assured her that that marriage was void, and offered no obstacle to her marriage with him; that he offered to take her to the woman to whom he stated he had been married in order that plaintiff might ascertain from her the truth of defendant's statement. The suspicions of a trusting woman might easily be allayed by this bold offer. In a similar case the plaintiff was informed by the defendant that he was divorced, and offered to take her to his mother to ascertain the truth of his assertion. He was not, in fact, divorced, and the court said that the very boldness and audacity of the offer would naturally disarm her suspicion. *Morrill* v. *Palmer,* supra.

If plaintiff entered into this relation with the defendant knowing that he was a married man, we may assume that plaintiff's attorney was sufficiently versed in the law to know that she could not maintain an action either for breach of promise of marriage, or for fraud and deceit. Fairly construed, the declaration asserts that the plaintiff received the attentions of the defendant under his assertion that his former marriage was void, and that there was no legal impediment to his marriage with plaintiff; that she relied upon these representations, entered into the marriage relation with him, lived with him for years as his wife, and had three children by him; that she desired a public ceremony in accordance with the statute, and that he promised to have such ceremony performed, but put her off with promises. Under the allegations of the declaration it would be difficult to conceive of a more grievous wrong. His former marriage was valid, and he knew it. He kept up his relations with plaintiff until he tired of her, and then obtained a divorce from his first wife, and sought the gratification of his lust by marrying

another. If she sustains by proof the allegations of her declaration, she is entitled to recover. If she married him with knowledge that he was a married man, her action must fail.

Judgment reversed, and the case remanded for further proceedings in accordance with the rules and practice of the court.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.