MRS. HELEN BEACH, Appellee, v. ROSA BEACH, Appellant.

**Marriage:** CIVIL CONTRACT: ACTIONABLE FRAUD: PLEADINGS. Marriage is 1   a civil contract, and so far as the property rights of the parties are concerned is based upon business principles, requiring the utmost good faith of all the parties; and the least fraud or deceit in connection therewith is the subject of judicial action. In the instant case plaintiff alleged that the mother of her husband falsely represented to her that he was the owner of specific real property, and that such false representations induced the marriage. *Held,* that the petition stated a cause of action against the mother for fraud and deceit.

**Same:** FRAUD INDUCING MARRIAGE: MEASURE OF DAMAGES: INSTRUCTION. 2   In an action by a wife based upon false representations that her husband was the owner of specific real estate, which representations induced the marriage, the wife is not entitled to a judgment for one-third of the present market value of the property; as the wife's interest is simply an inchoate dower right, subject to termination by her death prior to her husband, or by judicial sale during her life; but the jury should be instructed to determine from the evidence her present loss by reason of the fact that the husband did not own the land, and such loss as she is reasonably certain to sustain in the future, depending upon her own life expectancy and that of her husband.

**Same:** KNOWLEDGE AND INTENT: INSTRUCTION: EVIDENCE. In an action 3   at law for fraud and deceit the plaintiff must show a false representation of fact, with knowledge of its falsity and intent to deceive, and that the person to whom it was made acted upon it and was thereby injured; and upon the question of intent to deceive the defendant should be permitted to testify.

*Appeal from Lee District Court.*—HON. H. BANK, JR., Judge.

THURSDAY, JUNE 5, 1913.

ACTION for deceit, brought by plaintiff against defendant, who is her mother-in-law, in which she claimed that she was induced to enter into a marriage with defendant's son by reason of certain false and fraudulent representations regarding the ownership of certain land. Defendant pleaded a general denial, and on the issues so joined the case was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $1,600, and defendant appeals.—*Reversed.*

*E. C. Weber,* for appellant.

*Herminghausen & Herminghausen,* for appellee.

DEEMER, J.—This is a novel and unusual action, and the petition upon which it was tried contains so succinct a statement of plaintiff's claim that we here quote from it as follows:

That she is the wife of August Beach, and was married to him about . . . 1907; that August Beach, her husband, had lived with defendant Rosa Beach, and her husband, now deceased, before their marriage, and was living with his mother on the farm at the time of the marriage between plaintiff and August Beach; that the defendant, Rosa Beach, was solicitous to have her son, August Beach, marry, and in the name of her son, without his knowledge or consent, sought correspondence with the plaintiff, signing and using her son's name, and leading the plaintiff to believe that August Beach was the owner in fee simple of the farm on which he and the defendant, Rosa Beach, were at the time residing, viz., the N. ½, S. W. ¼, section 25, township 69 north, range 5 west, in Lee county, Iowa, which is of the reasonable value of $8,000; that the representations made in the said correspondence induced the plaintiff to accept said August Beach in marriage; that the said misrepresentations made by the said defendant, Rosa Beach, were

false and fraudulent and tended to deceive, and did deceive, the plaintiff; that not until long after their marriage did she (the plaintiff) learn that her husband, August Beach, was not the owner of the farm that the said defendant, Rosa Beach, led her to believe belonged to him, but the same belonged to the said defendant, Rosa Beach, and that her husband had no interest therein; that the plaintiff by said false and fraudulent misrepresentations of the defendant, Rosa Beach, has been damaged in the sum of $5,000.

The defendant did not challenge the sufficiency of the pleading by demurrer, but answered, denying generally the allegations thereof, and further pleaded that plaintiff suffered no damages whatever by reason of the alleged representations. After the verdict was rendered, the defendant filed a motion in arrest for the reason that the petition did not state a cause of action. She also filed a motion for a new trial based upon many grounds, to some of which we shall refer during the course of the opinion.

Testimony was adduced in support of every allegation of the petition, and the first question to be considered is, Does the petition state a cause of action?

I. In law, marriage is a civil contract, requiring the consent of parties capable of entering into other contracts, except as otherwise declared. Code, section 3139; *Brisbin v. Huntington,* 128 Iowa, 166. With its reli-

1. MARRIAGE: civil contract: actionable fraud: pleadings.

gious aspect or its sanctity, courts have nothing to do. The law of marriage, in so far as property interests are concerned, is founded on business principles, in which the utmost good faith is required from all the parties, and the least fraud in connection therewith is the subject of judicial cognizance.

In *Piper v. Hoard,* 107 N. Y. 77 (13 N. E. 629, 1 Am. St. Rep. 789), the Court of Appeals of New York said:

To say of plaintiff's mother, therefore, that she was too ready to marry a man because of the money he had or would necessarily leave to a child of the marriage, or that she was

an adventuress, induced to marry solely by fraudulent representations as to the pecuniary condition of her husband, does not, as I have said, furnish the least reason for refusing relief to plaintiff if she be otherwise entitled to it. If her mother had not been induced to marry by any such pecuniary considerations, clearly no cause of action would exist. It is because such considerations were the moving ones, and were induced by the fraud of defendant, that the plaintiff bases her right of action. There are some anomalies in the law relative to contracts or negotiations having marriage for their consideration, and they are based upon considerations which obtain in no other contract. The family relations and their regulation are so much a matter of public policy that the law in relation to them is based on principles not applicable in other cases; and all business negotiations having marriage for their end are regarded in much the same light by our courts. Thus a *particeps criminis* in the fraud has been permitted to recover in his own name against one who was no more guilty than he, when the marriage had taken place by reason of such fraud.

Even though it be said that the parties take each other for better or for worse, it has quite frequently been held that a woman, who is deceived into entering into a void marriage with a man already married, may maintain an action against him for deceit. *Morrill v. Palmer*, 68 Vt. 1 (33 Atl. 829, 33 L. R. A. 411), and cases cited; *Blossom v. Barrett*, 37 N. Y. 434 (97 Am. Dec. 747); *Pollock v. Sullivan*, 53 Vt. 507 (38 Am. Rep. 702); *Sears v. Wegner*, 150 Mich. 388 (114 N. W. 224, 14 L. R. A. [N. S.] 819). So, too, it has been held that a man, who induced another to marry a girl by false representations that she was virtuous, when, in fact, she had been seduced by himself and had become pregnant, is liable for damages in an action by the husband for fraud. *Kujek v. Goldman*, 150 N. Y. 176 (44 N. E. 773, 34 L. R. A. 156, 55 Am. St. Rep. 670).

In the instant case the charge is that, by false and fraudulent representations as to her son's ownership of land,

defendant deceived the plaintiff and induced her to marry
her son, to her damage, etc.

In *Neville v. Wilkinson,* 1 Browne, Ch. 543 (decided in
1782), the plaintiff was the individual who desired to marry
his coplaintiff's daughter, and he and the defendant, who was
an attorney to whom he owed a large amount of money, agreed
that defendant should represent to the father that the debt was
much less than in truth it was. He did so, and after marriage
he brought an action on a bond which would have made the
debt in excess of the amount represented, and the plaintiff,
the *particeps criminis,* was permitted to succeed in an action
brought by him and his father-in-law to compel the surrender
of the bond. . . . The English courts have held that a
person who, by acts or speech, represents property as belong-
ing to the proposed husband, when the possession thereof,
forms an inducement to the marriage, shall be bound to make
good the thing in the manner represented. Such is the case
of ·*Montefiori v. Montefiori,* 1 W. Bl. 363 (Easter term 1762,
Mansfield, C. J.). The facts of the case were these: Monte-
fiori being engaged in a marriage treaty, his brother Moses,
to assist him in his designs and represent him as a man of
fortune, gave him a note for a large sum of money as the
balance of accounts between him and his brother Joseph,
which balance he acknowledged to have in his hands, though
in truth none existed. This note was shown by Joseph to
the parents of the intended wife, and was an inducement
to the marriage. After the marriage, Moses desired to re-
claim the note so given without consideration, and the
matter was referred to arbitration, and the arbitrators
awarded the note to be given up, which Joseph refused to
do, and the case then came up on motion for an attachment
against Joseph for nonperformance of the award, and Joseph
made a cross-motion to set aside the award. Chief Justice
Mansfield held that where there were proposals of marriage,
and third persons represented anything in a light different
from the truth, even though by collusion with the husband,
they shall be bound to make good the thing in the manner in
which they represented it. It shall be as represented to be,
and the husband alone shall be entitled to relief, as well as
when the fortune has been specifically settled on the wife.
Atherly, in his work on Marriage Settlements (27 Law Lib.

chapter 34, marginal page 484)*, after citing the above case, says that the principle upon which the court proceeds in such cases, when the thing is not actually made the subject of the settlement, must be this, as he conceives: That, as the wife must be presumed to agree to the marriage as well in expectation of the present support which she and her children will receive from her husband as of the provision which he may have made for them after his death, a person who has been at all concerned in raising such expectation shall not be suffered in any wise to disappoint it.

See, also, *Piper v. Hoard*, 107 N. Y. 76 (13 N. E. 629, 1 Am. St. Rep. 789), in which Peckham, J., said, among other things: ". . . Such fraud is not in the least mitigated in its character by the statement that it consisted of fraudulent representations made to a woman to induce her to consent to a marriage in which the mercenary motive was the strong, if not the only, one. The fact that she was ready and desirous of bettering her condition, even though it was by a mercenary marriage, does not alter the other fact that the defendant enjoys property which he has acquired by successful perpetration of a fraud, and which, if the fraudulent representations by which he acquired it had been true, the plaintiff herein would be herself entitled to enjoy as owner." Again, in *Kujek v. Goldman*, 150 N. Y. 176 (44 N. E. 773, 34 L. R. A. 156, 55 Am. St. Rep. 670), the same court said:

It is difficult to see why a fraud, which, if practiced with reference to a contract relating to property merely, would support an action, should not be given the same effect when it involves a contract affecting not only property rights but also the most sacred relation of life. Fraudulent representations with reference to the amount of property belonging to either party to a proposed marriage, made by a third person for the purpose of bringing about the marriage, are held to constitute an actionable wrong, and the usual remedy is to require the person guilty of the fraud to make his representations good. *Piper v. Hoard, supra; Montefiori v. Montefiori*, 1 W. Bl. 363;

Atherly, Marriage Settlements, 484. In such cases the injury is more tangible and the measure of damages more readily applied than in the case before us, but both rest upon the principle that he who by falsehood and fraud induces a man to marry a woman is guilty of a wrong that may be remedied by an action; the amount of damages to be recovered depending upon the circumstances of the particular case.

Indeed, the writer of the article on Fraud in 20 Cyc. says, at page 79, that instances where the guilty person has, in some way, been compelled to make good his representations are frequent, citing, among other cases, *Neville v. Wilkinson,* 1 Browne, Ch. 543 (28 Eng. Reprints, 1289); *Scott v. Scott,* 1 Cox. Ch. 366 (29 Eng. Reprints, 1206). The only case which has been cited as holding to the contrary is *Brennen v. Brennen,* 19 Ont. 327. That was an action brought by a wife against her husband and his mother and father, in which it was claimed that the father and mother commenced negotiations with plaintiff for the purpose of bringing about a marriage with their son, and in which plaintiff claimed that they ''represented that the said Joseph Scott Brennen (their son) was a sober man and never drank any intoxicating liquor. That he (the said Joseph Brennen) was and always had been a man of unblemished moral character and reputation. That he (the said Joseph Scott Brennen) was a member of the very large and prosperous firm of M. Brennen & Son, then and still doing business in the said city of Hamilton. That he (the said Joseph Scott Brennen) had an income of $3,000 per annum. That he (the said Joseph Scott Brennen) had an income of $3,000 per annum over and above the income which he had as a partner in the said firm of M. Brennen & Sons.'' They further alleged that these representations were false and fraudulent and made with intent to deceive. The defendants demurred, and Falconbridge, J., said:

The law, it has been observed, makes no provision for the relief of a blind credulity, however it may have been produced; per Lord Stowell in *Wakefield v. Mackay,* 1 Phillim,

at page 137: 'Fraudulent misrepresentations of one party as
to birth, social position, fortune, good health, temperament
cannot vitiate the contract.' Schouler, Dom. Rel. section 23;
*Ewing v. Wheatley*, 2 Hagg. Con. 175. Nor even does the con-
cealment of previous unchaste and immoral behavior in general
vitiate a marriage, for public policy is said to 'open marriage
as the gateway to repentance and virtue.' The maxim *'caveat
emptor'* seems as brutal and necessarily applicable to the case
of marrying and taking in marriage as it is to the purchase of
a rood of land or of a horse. *A fortiori* the present action can-
not be maintained. There has been a change of the position
of the parties which can never be revoked. They can never
be replaced in their original *status;* and it would be against
public policy, public morals, and fraught with the greatest
damage to the most sacred of the domestic relations, if the
plaintiff should be entitled to succeed. That such an action
should lie is doubly against public policy in this: That, if
maintained at all, I see no reason why it should not be equally
maintainable whether the husband and wife are or are not
living together amicably, so that, if it be a wrong sounding in
damage for a woman to be linked for life to a man of evil
moral character, the astounding spectacle could be presented
of a wife launching, from the shelter of her husband's house,
an action against that husband's relatives for misrepresenting
his character and conduct before his marriage. She took her
chances and must now, as far as this court is concerned, read
into her contract the words 'for better, for worse, for richer,
for poorer.' The praise of the father, the brother, and par-
ticularly of the mother, are *simplex commendatio quæ non
obligat.* I was impressed by the difficulty of giving any proper
direction to the jury as to the measure of damages on the dif-
ferent branches of the case. Other objections to plaintiff's
right to recover were urged, both by way of demurrer and on
the facts. I rest my judgment on the want of precedent for
such an action, and on its being clearly, in my opinion, against
public policy. The action will be dismissed, with costs.

As will be observed, the judge writing the opinion was
not advised as to the nature of the authorities either in Eng-
land or in this country. Doubtless the representations in
that case, as to the character of the son, were not action-
able; and so also representations as to his earning capacity

would not support an action. But it does not follow that representations as to the ownership of specific land, in which the wife, immediately upon the marriage, would have a dowable interest, which could not be divested save by her own act, particularly if it were homestead in character, would not be actionable. Indeed, all the cases which have spoken on the subject seem to hold that an action for deceit will lie. The chief difficulty in such cases lies in stating any rule for the admeasurement of damages; and this brings us to the second vital proposition relied upon for a reversal.

II. The trial court instructed as follows upon the measure of damages: "(22) If, from the evidence under the law as defined in the instructions given you by the court,

2. SAME: fraud inducing marriage: measure of damages: instruction.
the jury finds a verdict in favor of the plaintiff, then you will allow the plaintiff as damages one-third of the present market value of the eighty-acre farm in question, as shown by

the evidence introduced on this trial bearing upon that subject." Manifestly this instruction was erroneous. Whether or not, in a proper action in equity, plaintiff might have had a trust declared in the land for her use and benefit, should she have survived her husband, is not now before us. The sole question is, How much is she entitled to by way of damages for the deceit, if any, practiced upon her? Had the son owned the land, as represented, plaintiff, upon her marriage to him, would have had nothing more than an inchoate right of dower therein, which might never have become consummate because of her death before her husband, and was subject to be defeated by judicial sale during her life. At most, she might, perhaps, have had a homestead right of which she could not have been deprived during life, but which ceased, so far as she was concerned, during her life. Doubtless the value of the land might be considered as bearing upon the support which she might reasonably have expected during life, and the society in which she might have moved, and the station in life which she might have

occupied., But it is manifestly erroneous to give her presently the full one-third of the market value of the land, as if she were entitled to dower consummate therein, as damages due to defendant's deceit. That she was not entitled to nor would she ever have received, it in person, unless her husband died before she did. In no case has it ever been held that a married woman is entitled to recover the value of her one-third interest in her husband's estate, while such third remains inchoate. Such inchoate right will, of course, be protected in a court of equity, but action for the value thereon will not lie until the husband's death. The plain reason for this is that dower is inchoate and may never vest. Unless she survives her husband, it does not vest, and she is not entitled to convert this inchoate right into cash, even as against a wrongdoer. No cases are cited holding to a contrary doctrine, and, if any such were to be found, we should not be inclined to follow them.

The damages in such cases are to be found by a jury, and of necessity are somewhat speculative in character. We have already indicated the matters which may be considered, and these are all subject to be defeated by plaintiff's death. The trial court should, in its instructions upon this subject, indicate what might be considered as a present loss to the plaintiff by reason of the fact that her husband did not own the land, and such as the evidence shows she was reasonably certain to lose in the future, depending somewhat upon her expectancy of life and the expectancy of life of her husband, and leave it to the jury to find what amount will make good her loss, present and prospective.

III. The eighth instruction given by the court reads as follows: "(8) If the jury finds from a preponderance of the evidence that the defendant Rosa Beach represented

3. SAME: knowledge and intent: instruction: evidence.

to the plaintiff that August Beach was the owner of the eighty acres of land in question, then such representations were false, and, if the jury finds that plaintiff relied thereon in becoming the

wife of August Beach, then your verdict must be for the plaintiff." This and other instructions of like import were erroneous in that they failed to include knowledge of the falsity of the statements and intent on the part of the defendant to deceive. Of course, if one makes a false representation knowing it be false, the law infers that he did it to deceive, *Boddy v. Conover,* 126 Iowa, 31; but the general rule in actions at law for deceit is that plaintiff must show a false representation of fact, with knowledge of its falsity and with intent to deceive, and that the person to whom made acted upon it and thereby suffered an injury. *Ley v. Insurance Co.,* 120 Iowa, 203; *Avery v. Chapman,* 62 Iowa, 144; *Allison v. Jack,* 76 Iowa, 205; *Clement v. Swanson,* 110 Iowa, 106; *Sylvester v. Henrich,* 93 Iowa, 489; *Gee v. Moss,* 68 Iowa, 318; *Scroggin v. Wood,* 87 Iowa, 497.

IV. The intent of the defendant being a material element of the charge, defendant should have been permitted to testify thereto. An examination of the record also convinces us that the cross-examination of plaintiff was too narrowly limited by the trial court. Some other errors appear which are not likely to arise upon a retrial, and we do not stop to consider them at this time.

For the errors pointed out, the judgment must be, and it is, *Reversed.*