REINAH DEVELOPMENT CORP., Appellant-Respondent, v KAATERSKILL HOTEL CORP. et al., Respondents-Appellants.

First Department, April 6, 1982

APPEARANCES OF COUNSEL

*David Halperin* of counsel (*Evelyn F. Cohen* with him on the brief; *David Halperin, P.C.,* attorney), for appellant-respondent.

*Michael R. Gottlieb* of counsel (*Markovits, Markovits, Blustein & Gottlieb, P.C.,* attorneys), for respondents-appellants.

OPINION OF THE COURT

BLOOM, J.

Defendant Kaaterskill Hotel Corp. was the owner of Young's Gap Hotel, located in Liberty, New York. Defendant Portnick was the president and the principal of Kaaterskill and acted for it in the events hereinafter set forth.

Kaaterskill, which had purchased the property in August, 1968 for $275,000, sold it to Reinah, the plaintiff, in April, 1970 for the sum of $355,000. While the precise terms of the sale are not indicated by the record Reinah assumed an existing first mortgage, originally in the principal amount of $175,000 and paid cash, the amount of which is not disclosed. Additionally, a second purchase-money mortgage was also involved.

Reinah's purpose in the purchase was to develop the property by building and selling condominium apartments. Seemingly, it was unable to attract the necessary financing. To recoup its investment it sought to resell the property. This, too, proved unavailing. To rescue Reinah from its dilemma, Kaaterskill lent Reinah $9,630.53, representing one half of the real estate taxes due on June 14, 1970. In return therefor Reinah assigned to Kaaterskill the net income of the hotel and delivered to Kaaterskill a deed to the property to be held in escrow until August 15, 1970. In the event that Reinah failed to repay the loan by the specified date or to pay the interest and amortization due on the first mortgage on or before August 20, 1970 Kaaterskill was authorized to "record the deed and execute against the assignment". In accepting the terms of the agreement Kaaterskill expressly waived any default in payment on the second mortgage held by it "unless and until there is a default in payment on August 15th, 1970 or August 20th, 1970, as set forth above". The agreement is memorialized in a letter dated June 10, 1970.

Plaintiff defaulted in repayment to Kaaterskill of the loan for taxes and in payment of the amortization and interest due on the first mortgage. However, Kaaterskill extended the time to meet these obligations. The new deadline fixed is a point of contention between the parties. Reinah asserts that it was September 30, 1970, while defendants urge that since Kaaterskill had already made the August payment to the first mortgagee the extension was to September 15, 1970.

During this period negotiations by Reinah to sell the property to Sponsors of Logos, Inc. (Logos), were actively going forward. Indeed, the imminence of the sale was the primary factor leading to the extension by Kaaterskill.

Reinah contends that on September 16, 1970 an agreement was made with Portnick for Kaaterskill to advance $10,000 of the September payments due to the first mortgagee if Reinah would pay the balance. Despite this agreement defendants demanded payment in full on September 21, 1970. When, later that day, Reinah had the money and attempted to reach Portnick to inform him that payment would be made it ascertained that he had gone to Washington, D. C., leaving instructions with his attorney to file the deed the next morning. On September 22 Kaaterskill recorded the deed. Despite agreement that Reinah be given notice before offering the deed for filing, no such notice was given. When the deed was filed it bore the legend "THIS DEED IS GIVEN IN LIEU OF FORECLOSURE. The shareholders of REINAH DEVELOPMENT CORP. have duly authorized this conveyance in accordance with § 909 of the Business Corporation Law". The legend was not on the deed when it was delivered by Reinah to Portnick.

Thereafter, and in order to induce Reinah to forbear from taking action to set aside the delivery of the deed to Kaaterskill on the ground that such delivery had been effected without the requisite approval of the shareholders and the board of directors of Reinah (Business Corporation Law, § 909) or to bring action against the defendants for fraud or breach of contract and to further induce it to deliver the requisite consents of the board of directors and shareholders, defendants agreed that upon a sale of the property Reinah would be reimbursed, out of the proceeds of the sale, for the cash investment made by it. Pursuant to this agreement Reinah delivered the necessary certificate of stockholders and directors to defendants.

In December, 1970 defendants sold the property to Logos for $475,000. Of this sum $65,000 was cash. The balance consisted of an assumption of the first mortgage and the issuance of a second mortgage. Plaintiff demanded reimbursement of its cash investment as had been agreed upon. When defendants refused to make payment, this action followed.

The complaint contained eight causes of action. Although based on different theories, all were for fraud or had overtones of fraud. At the close of plaintiff's case, six of

the eight causes were dismissed. Left for consideration by the jury were two fraud claims. The first such claim was based upon the representation that the time within which to make the payment on the first mortgage was extended to September 30, 1970; and the second that Reinah would be reimbursed for its cash investment by reason of which plaintiff was induced to deliver to Kaaterskill the certificate certifying that the shareholders and directors had approved of the delivery of the deed to Kaaterskill. However, in its charge to the jury the trial court instructed them that Reinah had failed to establish the damages which flowed from these fraudulent acts. Accordingly, it informed them that if they found that Reinah was entitled to recovery, its recovery was limited to nominal damages only. The trial court then proceeded to charge them that if they found that the actions of defendants had been willful, wanton and malicious, it had the power to award punitive damages. The jury returned a verdict of $1 as compensatory damages and awarded punitive damages of $225,000.

Thereafter defendants moved to set aside the verdict both as to compensatory damages and punitive damages. The court denied the motion as to compensatory damages. However, it held that the testimony was insufficient to establish "any malicious, vindictive or morally reprehensible intent of wanton and reckless behavior by Alan Portnick individually or on behalf of his corporation necessary to support an award for punitive damages". Accordingly, it set that award aside. It is from this limited portion of the judgment that Reinah appeals.

We disagree with the trial court's determination that, on the basis of the evidence presented, a finding of willful, wanton and malicious conduct was unwarranted. Accordingly, we reverse and reinstate the verdict for punitive damages.

In this State it has been settled doctrine for much more than a century "that for the prevention of fraud, malice or oppression, the jury may give such [exemplary] damages in actions *ex delicto* as a punishment of the defendant and admonition to others" (*Hamilton v Third Ave. R. R. Co.*, 53 NY 25, 28; see, also, *Tillotson v Cheetham*, 3 Johns 56). Since that time the right has been enlarged. "Punitive or

exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future. (See, e.g., *Toomey* v. *Farley,* 2 N Y 2d 71, 83; *Krug* v. *Pitass,* 162 N. Y. 154, 161; *Hamilton* v. *Third Ave. R. R. Co.,* 53 N. Y. 25, 28; *Oehlhof* v. *Solomon,* 73 App. Div. 329, 333-334). Moreover, the possibility of an award of such damages may not infrequently induce the victim, otherwise unwilling to proceed because of the attendant trouble and expense, to take action against the wrongdoer" (*Walker v Sheldon,* 10 NY2d 401, 404; see, also, *Faulk v Aware, Inc.,* 19 AD2d 464, affd 14 NY2d 899).

Without endeavoring to catalogue the nature of the actions in which punitive or exemplary damages are recoverable, it is sufficient to point out that fraud constitutes a sufficient basis for such an award (*Kujek v Goldman,* 150 NY 176). Nor is it necessary that the fraud perpetrated be one directed at the public generally to justify the assessment of punitive damages. Such damages may be awarded where the right infringed by the fraud is purely a private right. (*Borkowski v Borkowski,* 39 NY2d 982; *Walker v Sheldon,* 10 NY2d 401, *supra.*) To the extent that *Oehlhof v Solomon* (73 App Div 329 *supra*) would appear to indicate to the contrary, it is no longer regarded as sound law. The basic criterion is the defendants' moral culpability.

"Since punitive damages are intended to punish the wrongdoer and deter others so inclined, their availability is measured by the severity of defendant's conduct and they may be awarded when the proof establishes that his conduct is gross, wanton or willful" (*Chase Manhattan Bank, N. A. v Perla,* 65 AD2d 207, 211).

"While there 'is no rigid formula by which the amount of punitive damages is fixed' (*I.H.P. Corp. v. 210 Cent. Park South Corp.,* 16 A D 2d 461, 467 affd. 12 N Y 2d 329) there are limits beyond which a jury should not be permitted to go. It is the duty of the court to keep a verdict for punitive damages within reasonable bounds considering the purpose to be achieved as well as the *mala fides* of the

defendant in the particular case". (*Faulk v Aware, Inc.,* 19 AD2d 464, 472 [as per RABIN, J.], affd 14 NY2d 899, *supra.*)

Here the evidence submitted to the jury justified findings that after default by Reinah in repayment of the loan for taxes and the payment of amortization and principal on the first mortgage due on August 20, 1970, the parties extended the time within which to comply with the letter agreement of June 10, 1970 to September 30, 1970; that defendants never intended to abide by this agreement and on September 22, 1970 when the negotiations between Reinah and Logos had reached a point where sale of the property to Logos at a sum substantially in excess of the amount owed by Reinah to Kaaterskill seemed assured — a circumstance of which defendants were kept apprised both by Reinah and the broker acting for Reinah — defendants had the deed filed in violation of their agreement to wait at least until September 30, 1970 and in violation of their agreement to give plaintiff prior notice of the filing; that the legend added to the deed was added by a representative of defendants without plaintiff's consent or authority; that the representation that, upon a sale of the property plaintiff would be reimbursed for its cash investment in the property was made without any intention to comply therewith and was made solely to induce Reinah to transmit to defendants the consent under the Business Corporation Law necessary to enable Kaaterskill to convey a good and valid title, and that defendants, based on their awareness of the state of the negotiations between Reinah and Logos, filed the deed so that they could reap for themselves the benefit of those negotiations. Bottomed on these findings, and in light of the jury's verdict we must assume that they were made, there is present the willful, wanton and malicious conduct sufficient to justify a verdict for exemplary damages.

There remains only the question of whether the award for punitive damages was excessive. We think it was not. Kaaterskill purchased the property for $275,000. It sold it to Logos for $475,000, a profit of $200,000. In addition, there was a substantial cash payment, the amount of which is not disclosed, upon the interim sale to Reinah. Unless the punitive damages are sufficiently high to elimi-

nate the profit realized by the willful, wanton and malicious conduct they will not serve to deter others, a major purpose of exemplary damages.

Accordingly, the amended judgment of the Supreme Court, New York County (L. COHEN, J.), entered October 1, 1980 is reversed, on the law, the facts and in the exercise of discretion, to the extent appealed from, with costs, and the jury award for punitive damages reinstated. The appeal from the judgment of the Supreme Court, New York County (L. COHEN, J.), entered August 14, 1980 is dismissed, without costs, on the ground that said judgment has been superseded by the judgment of October 1, 1980. The cross appeal from so much of the judgment of the Supreme Court, New York County (L. COHEN, J.), entered October 1, 1980 which denied defendants' motion to dismiss the complaint at the close of the entire case is dismissed, as abandoned, without costs.

ROSS, J. P., FEIN and MILONAS, JJ., concur.

Amended judgment, Supreme Court, New York County, entered on October 1, 1980, unanimously reversed, on the law, the facts and in the exercise of discretion, to the extent appealed from. Plaintiff shall recover of defendant $75 costs and disbursements of this appeal. The appeal from the judgment of said court entered on August 14, 1980 is dismissed, without costs and without disbursements, on the ground that said judgment has been superseded by the judgment entered on October 1, 1980. The cross appeal from the judgment entered on October 1, 1980 is dismissed, as abandoned, without costs and without disbursements.