EDITH MAIDMAN, Individually and as Temporary Administratrix of the Estate of IRVING MAIDMAN, Deceased, Respondent, v JOANN STAGG, Appellant.

Second Department, August 10, 1981

APPEARANCES OF COUNSEL

*Morris, Duffy, Ivone & Jensen (Henry J. Boitel* of counsel), for appellant.

*Emanuel Thebner* for respondent.

OPINION OF THE COURT

RABIN, J.

The instant action arises from a motor vehicle accident

which occurred on June 7, 1978, when Irving Maidman, who was crossing a street in Nyack, New York, was struck by an automobile driven by the defendant. Irving Maidman sought damages for personal injuries; his wife, Edith Maidman, sought damages for loss of consortium. In the course of the trial, Irving Maidman died, apparently of causes unrelated to the accident (Edith was appointed as temporary administratrix of the estate). The jury returned a verdict in favor of the plaintiffs. It found that 75% of the injuries sustained by Irving Maidman was attributable to his own negligence; the remaining 25% to the defendant's negligence. Pursuant to the comparative negligence statute (CPLR art 14-A), the jury awarded the estate of Irving Maidman, as plaintiff, the sum of $30,000, representing 25% of $120,000, which it assessed as Irving Maidman's total damages. In addition, the jury awarded Edith Maidman $20,000 on her consortium claim. The record does not reveal how the $20,000 figure was arrived at. After the verdict was returned, the court denied the defendant's request that the jury be asked whether its consortium verdict reflected the comparative negligence of Irving Maidman. The defendant appeals from the judgment entered upon the jury verdict.

This appeal raises the question of whether the damages awarded Edith Maidman, personally, should have diminished in the proportion that her husband's injuries were attributable to his own negligence. The defendant contends that the consortium recovery was subject to the comparative negligence defense. The plaintiffs, on the other hand, argue that the consortium claim was totally independent of Irving Maidman's claim for damages, and would not be affected by his negligence. Before we address the merits of the controversy, a brief discussion of the nature of the loss of consortium action is in order.

The modern action for loss of consortium is derived from the early action to recover, in trespass or case, for "beating a man's wife" (3 Blackstone's Comm [Dawsons, 1st ed], p 140; 1 Harper and James, The Law of Torts, p 637). The action was distinct from the tort against the wife, in her own right, which, at common law, could be remedied only through a joint action of husband and wife (see Ben-

*nett v Bennett,* 116 NY 584). Pursuant to statutes enacted in the nineteenth century (see L 1860, ch 90; L 1890, ch 51; see, also, General Obligations Law, § 3-313), married women became entitled to sue in their own right. Early cases recognize, however, that notwithstanding a woman's right to recover for her own injuries, her husband retained the right to sue separately for the loss of his wife's services *(Filer v New York Cent. R. R. Co.,* 49 NY 47), and consortium *(Butler v Manhattan Ry. Co.,* 143 NY 417), and for medical expenses accrued *(Robison v Lockridge,* 230 App Div 389) on account of her injuries. Thus, in *Butler v Manhattan Ry. Co. (supra,* p 420) the Court of Appeals stated: "The wife has her own action for her physical injury, and for the pain and suffering to which she has been or will be subjected. The husband's action is for the consequences affecting his estate and for depriving him of the aid, society and companionship of his wife, which, except for the wrong, he might reasonably expect to enjoy."

In *Millington v Southeastern Elevator Co.* (22 NY2d 498) the Court of Appeals held that a wife could recover for the loss of her husband's consortium. In so concluding, the court rejected arguments that the consortium action was a " 'fossil from an earlier era' " (p 501) and permitted the recovery of " 'sentimental' " or " 'parasitic' " (p 503) damages. The court stated (pp 502, 503) that interests sought to be protected by the consortium action were "personal to the wife", and embraced "such elements as love, companionship, affection, society, sexual relations, solace and more".

The relationship between the consortium action and the principal injury action has been considered in both pre- and post-*Millington* decisions. It has been held that consortium claims, like actions brought by parents to recover for loss of their children's services, are derivative; plaintiff's right of recovery for loss of consortium must be tested against the injured spouse's right to recover personally for his own injuries *(Balestrero v Prudential Ins. Co.,* 283 App Div 794; *Leo v Reile,* 11 AD2d 1083).

Recently, in *Liff v Schildkrout* (49 NY2d 622) the Court of Appeals noted the derivative character of the consortium

action concluding that there could be no claim for loss of consortium predicated upon the death of the injured spouse. The court stated (pp 632-633): "[A] spouse's cause of action for loss of consortium [does not exist] in the common law independent of the injured spouse's right to maintain an action for injuries sustained. (See *Millington v Southeastern Elevator Co.*, 22 NY2d 498, 507-508; *Green v Hudson Riv. R. R. Co.*, 28 Barb 9, *supra; Sorensen v Balaban*, 11 App Div 164, 165, *supra.)* In this regard, we adopt the reasoning set forth in *Osborn v Kelley* (61 AD2d 367, 370, *supra)* 'that insofar as plaintiff is attempting to recover for loss of consortium for the period prior to decedent's death, a cause of action is stated. *(Hentze v Curry Chevrolet Sales & Servs.*, 46 AD2d 800.) Such a cause of action, however, is a derivative one (cf. *Millington v Southeastern Elevator Co.*, 22 NY2d 498.) The wrongful death statute created a new cause of action based not upon damage to the estate of the deceased because of death, but rather for the pecuniary injury to the surviving spouse and next of kin of the decedent *(Creco v Kresge Co.*, 277 NY 26, 32). Since a decedent has no cause of action to recover damages for his death (EPTL 11-3.3), plaintiff has no derivative cause of action to recover for loss of consortium due to decedent's death.' "

As a consequence of the derivative character of the consortium action, it was held, in *Maxson v Tomek* (244 App Div 604), a case decided prior to the enactment of the comparative negligence statute, that contributory negligence of the injured spouse stood as a complete bar to consortium recovery (see, also, *Reilly v Rawleigh*, 245 App Div 190). The *Maxson* rule is in accord with the position of the large majority of courts in contributory negligence jurisdictions (see *Chance v Lawry's Inc.*, 58 Cal 2d 368; *Pioneer Constr. Co. v Bergeron*, 170 Col 474; *Mueller v Sangamo Constr. Co.*, 61 Ill 2d 441 [wrongful death action, relying on consortium cases and Restatement, Torts 2d, § 494]; *Thibeault v Poole*, 283 Mass 480; *Peters v Bodin*, 242 Minn 489; *Huff v Trowbridge*, 439 SW2d 493 [Mo]; *Elmore v Illinois Term. R. R. Co.*, 301 SW2d 44 [Mo, applying Illinois law]; *Ross v Cuthbert*, 239 Ore 429; *McKee v Neilson*, 444 P2d 194 [Okla]; *Elser v Union Paving Co.*,

167 Pa Super 62 [medical expenses]; *Desjourdy v Mesrobian*, 52 RI 146; contra, *Handeland v Brown*, 216 NW2d 574 [Iowa]). It is also consistent with the Restatement of Torts 2d, which provides in section 494 that "[t]he plaintiff is barred from recovery for an invasion of his legally protected interest in the health or life of a third person which results from the harm or death of such third person, if the negligence of such third person would have barred his own recovery."

With New York's adoption of comparative negligence, the contributory negligence of the claiming party no longer stands as a complete bar to recovery. The new scheme of comparative negligence is set forth in CPLR 1411: "§ 1411. Damages recoverable when contributory negligence or assumption of risk is established. In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages."

The effect of the comparative negligence law on derivative claims was considered by the Court of Claims in *Meyer v State of New York* (92 Misc 2d 996). Douglas Meyer, a State university student was injured when he fell off a foot bridge on the Stony Brook campus. He commenced an action against the State for personal injuries sustained; his father sued derivatively for medical expenses and loss of services. The court, as trier of fact, adjudged the State 50% liable for the student's injuries, the remaining 50% being chargeable to Meyer's own culpable conduct. While finding that the claim for loss of services had not been proved, the court held that the father could recover for 50% of the medical expenses. In reaching this conclusion, the court noted that derivative actions were considered to be "personal injury" actions *(Bailey v Roat*, 178 Misc 870; *Constantinides v Manhattan Tr. Co.*, 264 App Div 147), and therefore included within the ambit of the comparative negligence law. Although the father was himself not guilty

of contributory negligence, his son's negligence was "attributable" to him within the meaning of CPLR 1411.

*Meyer (supra)* has been followed by *Abbate v Big V Supermarkets* (95 Misc 2d 483), *Lieberman v Maltz* (99 Misc 2d 112), and *Lane v Great Atlantic & Pacific Co.* (NYLJ, Nov. 3, 1980, p 12, col 2), all of which held that the comparative negligence of the injured spouse warranted a pro rata reduction in the damages recoverable in an action for loss of services or consortium. The question, however, has never been considered by the Appellate Division or the Court of Appeals.

Among the comparative negligence jurisdictions, four appear to be in accord with the conclusion reached in *Meyer (supra)* and *Abbate (supra)* (see *Eggert v Working*, 599 P2d 1389 [Alaska]; *Nelson v Busby*, 246 Ark 247; *Hamm v City of Milton*, 358 So 2d 121 [Fla]; *White v Lunder*, 66 Wis 2d 563). In two cases, however, a contrary view has been expressed. In *Macon v Seward Constr. Co.* (555 F2d 1, 2), the Court of Appeals for the First Circuit, construing New Hampshire's comparative negligence law, held that the consortium cause of action was "separate and distinct" from that of the injured spouse, and was unaffected by the latter's contributory negligence. In California, which adopted comparative negligence by judicial decision *(Li v Yellow Cab Co. of Cal.*, 13 Cal 3d 804), an intermediate appellate court has followed the *Macon* holding *(Lantis v Condon*, 95 Cal App 3d 152). The court noted that the third-party tort-feasor, although liable for all consortium damages, could obtain contribution from the contributorily negligent, injured spouse.

In neither *Lantis (supra)* nor *Macon (supra)* did the courts suggest that their rejection of the majority rule was mandated by the adoption of comparative negligence. Rather, those courts relied on scholarly criticism of the rule, which was written before the widespread adoption of comparative negligence. In The Law of Torts, for example, Harper and James have characterized the rule as "illogical" (The Law of Torts, vol 1, p 640), suggesting that "[i]f there are different interests * * * by different wrongs, it might be thought irrelevant to the husband's cause of action

that the wife's has been barred by her contributory negligence."

Similar objections were made by Professor Prosser. He concluded that "the denial of recovery can be justified, if at all, only upon the ground that the action for loss of services is itself an historical exception to the rule that one person cannot maintain an action for an injury to another, and hence is limited to cases where the other is free from fault" (Prosser, Torts [4th ed], p 893).

■ We find ourselves unable to agree with the analysis put forward by Prosser and Harper and James, and the courts in *Lantis (supra)* and *Macon (supra)*. The New York courts have never recognized an "independent" claim for consortium *(Liff v Schildkrout,* 49 NY2d 622, *supra)*, and we see no persuasive reason why they should do so. The consortium claim and the principal personal injury claim are closely interconnected; together, they represent the total, compensable damages—direct and indirect—suffered as a result of the principal plaintiff's injury. Viewed in this light, it makes little sense to hold that an injured party's negligence would bar or limit his recovery for *direct* injury, but would not affect his spouse's recovery for *indirect* injury. The situation described herein is factually distinguishable from two which sometimes arise in automobile negligence cases, i.e., where the plaintiff sues for personal injuries sustained in an accident while a passenger in an automobile driven by a contributorily negligent spouse, and where the plaintiff sues for property damage to an automobile, which has been driven by a negligent spouse. In both the latter situations, the plaintiff is permitted a complete recovery from a third-party tort-feasor (see *Mandels v Liberty Mut. Ins. Co.,* 45 NY2d 455; *Pinieri v Rosenbaum,* 20 AD2d 651), although the third party may seek contribution from the contributorily negligent spouse. The plaintiff has suffered his or her own direct injury, and the right of recovery is totally independent of the rights or liabilities of the negligent spouse. The consortium plaintiff, by contrast, has suffered no direct injury of her own. Her right to recover is derived, both in a literal and legal sense, from the injury suffered by her spouse. Where the latter's injury is not compensable (under contributory negli-

gence) or only partially compensable (under comparative negligence) because of his own culpable conduct, a third party should not be made to bear the full burden of the consortium damages.

The application of the *Maxson* rule *(Maxson v Tomek,* 244 App Div 604, *supra)* in a comparative negligence context presents no great conceptual difficulties. As the court in *Meyer v State of New York* (92 Misc 2d 996, *supra)* correctly concluded, the comparative negligence statute was not intended to alter Judge-made law concerning derivative actions.* The negligence of the injured spouse is therefore "attributable" to the consortium plaintiff within the meaning of CPLR 1411. Whereas, under former law, the contributory negligence of the injured spouse stood as a complete barrier to a consortium recovery, under CPLR article 14-A, the injured spouse's culpable conduct will either bar or limit the recovery for loss of consortium depending upon the facts of the case.

It should be noted, in this regard, that the application of the *Maxson* rule under contributory negligence sometimes produced harsh results, since the injured spouse's contributory negligence, however minor, would totally preclude both consortium and personal injury damages. These difficulties will not arise under comparative negligence. Slight negligence on the part of the injured spouse will now have only a slight effect on the plaintiff's recovery. The damages recoverable by the injured spouse and the consortium plaintiff will be reduced in the proportion that the injured spouse's "culpable conduct * * * bears to the culpable conduct which caused the damages." (CPLR 1411.)

On the facts before us, we conclude that the jury should have been instructed that the damages awardable to Edith Maidman, on her consortium claim, should have been re-

---

* We would note, however that the negligence of the injured spouse is not "imputed" to the consortium plaintiff, as the opinion in *Meyer v State of New York* (92 Misc 2d 996, *supra)* might suggest. While New York cases have consistently concluded that actions for loss of services and consortium are *derivative,* they have never held that the doctrine of *imputed contributory negligence* is applicable in such cases. *Meyer,* it should be recalled, concerned a derivative claim for medical expenses, and we need not consider whether "imputed contributory negligence" applies in such a case.

duced in the proportion that her now deceased husband was responsible for his own injuries. Since the jury was not so instructed, and the record does not reveal how the $20,000 figure was reached, a new trial is required, limited solely to the question of consortium damages. The total damages should be reduced by 75%, to reflect Irving Maidman's negligence.

■■ The defendant also seeks reversal on the issue of liability, asserting that other errors were committed in the course of the trial. We find no merit to any of those contentions. The trial court properly declined to charge the emergency doctrine in this, an ordinary intersection accident case *(Voleshen v Coles,* 60 AD2d 468). Nor, do we believe that the court erred in refusing to declare a mistrial after Irving Maidman's death. At the time Irving Maidman died, he had already testified, and been cross-examined. The trial court decided to proceed only after it had polled the jurors individually, and determined that there was no possibility of prejudice to the defendant. The judgment, insofar as it found defendant liable, should be affirmed. Finally, the jury's award of damages for the injuries to Irving Maidman was amply supported by the evidence.

DAMIANI, J. P., TITONE and MANGANO, JJ., concur.

Judgment of the Supreme Court, Rockland County, entered October 18, 1979, modified, on the law, by deleting the second decretal paragraph thereof. As so modified, judgment affirmed, without costs or disbursements, and matter remitted to the Supreme Court, Rockland County, for a new trial consistent herewith on the question of the damages recoverable by plaintiff Edith Maidman, in her individual capacity, for loss of consortium.