Almerico **NITTOLO** and Aileen Nittolo, Plaintiffs,

v.

Lori **BRAND** and Robert Brand, Defendants.

No. 81 Civ. 0500 (JES).

United States District Court, S.D. New York.

Feb. 16, 1983.

Richard Kreitman, White Plains, N.Y., Simonson, Hess & Leibowitz, P.C., New York City, for plaintiffs; Alan B. Leibowitz, New York City, of counsel.

Morgan, Melhuish, Monaghan & Meyer, New York City, for defendants; Franklin N. Meyer, New York City, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge.

In December, 1980 plaintiff, Almerico Nittolo, commenced the instant action seeking to recover damages for personal injuries he allegedly sustained when an automobile driven by defendant Lori Brand and owned by Robert Brand collided with the automobile he was driving. His wife, Aileen Nittolo, seeks to recover damages for loss of services.

In September 1981, defendants complained to the Court that Mr. Nittolo was obstructing discovery by giving false testimony at his deposition concerning his prior injuries and employment history.[1] As a consequence, the Court issued an order directing that defendants be afforded further discovery.[2] The Court further directed

1. Defendants first apprised the Court of discovery problems on September 18, 1981 through a telephone conference call between counsel for both parties and the Court. Affirmation of Franklin N. Meyer of November 6, 1981, at 15 (hereinafter "Meyer Affirmation"); Transcript of Hearing of December 16, 1981 at 4.

2. The order of September 25, 1981 provides:
Upon the notification by counsel for defendants alleging that misstatements concerning plaintiff Nittolo's pre-existing medical condi-

tion, prior injuries and treatment therefore [sic], prior hospitalization and loss of work, and previous filings of Workmen's Compensation claims have been made, the Court
ORDERS that the depositions of Drs. Silverman and Brittis may be taken by defendants; and
ORDERS that plaintiff provide authorization for defendants to obtain hospital, personnel and Workmen's Compensation records insofar as they relate to plaintiff's prior injuries and

plaintiff to produce authorizations permitting defendants to obtain his medical records. The order also directed that all discovery be completed by October 30, 1981.

On October 9, 1981 defendants' counsel, Mr. Meyer, inquired of plaintiffs' attorney, Mr. Leibowitz, as to when he would receive the authorizations which the Court had ordered plaintiff to produce. Mr. Leibowitz replied that he would take the request "under advisement," a peculiar response since the Court had already directed that they be produced. Deposition of Almerico Nittolo of October 9, 1981, at 83. Although Mr. Nittolo executed the authorizations later that day, Mr. Leibowitz retained them until October 15, 1981. Exhibit AA to the Reply Affirmation of Franklin N. Meyer of November 17, 1981. Moreover, before Mr. Meyer could obtain Mr. Nittolo's medical records, Mr. Nittolo went to the office of his family physician, Dr. Kantha, and took possession of those records.[3]

Upon learning of Mr. Nittolo's conduct, defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 37 and 41,[4] alleging that Mr. Nittolo had willfully obstructed discovery in that he: (1) wrongfully removed the medical records and retained custody thereof in violation of the Court's order of September 25, 1981; (2) repeatedly lied under oath about his prior medical and employment histories; and (3) failed to produce authorizations and answer interrogatories in a timely manner.[5] Defendants also moved for costs and attorneys fees. After this motion was made and, as the Court finds, as a consequence thereof, the medical records, or at least what plaintiff claims to be the medical records, were returned to Dr. Kantha. It is significant that, although these records were obtained by plaintiff on October 14 or 15, 1981, they remained in the possession of plaintiff or his attorney until November 17, 1981.

In his responding papers plaintiff admitted taking the records, but maintained that he did so in good faith. Affirmation of Alan B. Leibowitz dated November 13, 1981 at 6–7. He denied lying under oath or otherwise willfully obstructing discovery. Id. at 2–4.

Because of the seriousness of the allegations made against plaintiff and the severity of the sanction sought by defendants, the Court scheduled a hearing at which plaintiff was afforded an opportunity to respond to those allegations. At that hearing, however, rather than persuading the Court that defendants' claims lacked merit and that dismissal was inappropriate, plaintiff's testimony fully supported defendants' contentions.

Plaintiff's explanation for his extraordinary conduct in removing his medical rec-

---

medical treatment pertinent to the present litigation; and further

ORDERS that the depositions of the parties be completed forthwith. All discovery must be completed by October 30, 1981.

**3.** Mr. Nittolo's family physician had been Dr. Costa. When Dr. Costa retired, Dr. Kantha apparently took over his practice. Dr. Kantha stated that he surrendered all the original records to Mr. Nittolo and did not retain copies. He further stated that he does not remember what the files contained or whether all the records were returned and that he has no independent knowledge of Mr. Nittolo's medical condition or history. Affidavit of Rajani K. Kantha, sworn to December 29, 1981.

**4.** Rule 37(b)(2) provides, in pertinent part:
Sanctions by Court in Which Action is Pending. If a party ... fails to obey an order or to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered

under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

\* \* \* \* \* \*

(C) An order striking out pleadings or parts thereof,
or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; ...

**5.** Defendants' Interrogatories were served on plaintiffs in January 1981, but were not answered until April 1981. Plaintiffs had neither objected nor requested an extension of time to answer. See Fed.R.Civ.P. 33. As is clear from the discussion *infra* the Court's decision does not rest upon this ground and the Court makes no finding with respect to the merits of this contention.

ords from the custody of his personal physician was incredible, totally unsupported by any other evidence in the case, and was indeed contradicted by his own attorney. When given the opportunity to explain why he had picked up his records, plaintiff testified that he did so at the request of Mr. Meyer, the defendants' attorney. Transcript of Hearing of December 16, 1981, at 28–29, 50–52, 106 (hereinafter "Tr. __"). Since Mr. Meyer had already obtained an authorization for those records, (albeit not without some difficulty as noted above), the Court finds it incredible that Mr. Meyer would have requested the plaintiff to do so. Moreover, the transcript of Mr. Nittolo's deposition reflects no such request. It is therefore not surprising that Mr. Meyer was not called by plaintiff to corroborate plaintiff's testimony in that regard.

Moreover, plaintiff's attorney in an affirmation stated that Mr. Nittolo had gotten the records at *his* request, which testimony, even if credited, contradicts plaintiff's testimony. Affirmation of Alan B. Leibowitz of December 29, 1981 at 1. Plaintiff's credibility is further impeached by the fact that plaintiff testified that, when he picked up the records, he told Dr. Kantha that he needed them for the lawsuit.[6] Tr. at 29, which testimony was flatly contradicted by Dr. Kantha who testified that plaintiff had told him that he wanted the records because he had moved and it was no longer convenient to visit Dr. Kantha's office. Affidavit of Rajani K. Kantha sworn to December 29, 1981.

The Court therefore finds that Mr. Nittolo testified falsely at the very hearing at which the Court afforded him an opportunity to explain his conduct.

It is also significant that there is considerable doubt as to whether Mr. Nittolo's medical records were returned to Dr. Kantha intact. While Mr. Nittolo testified at his deposition that he saw his family physician, Dr. Costa, for a physical examination at least once a year for six or seven years commencing in 1970 or 1971, Deposition of Almerico Nittolo of September 11, 1981, at 58–59, the transcript prepared by Dr. Costa of the records returned by Mr. Nittolo reflect only three visits for various ailments over a four year period. Exhibit 1 to the Affirmation of Franklin N. Meyer of January 6, 1982.

The Court further finds that Mr. Nittolo's testimony at the hearing with respect to his prior medical history was likewise false, a circumstance that fully supports defendants' claim that Mr. Nittolo improperly obstructed discovery by giving false and evasive testimony about that medical history at his deposition. Mr. Nittolo stated at his deposition that he had no pre-existing back problems and that he had never previously suffered any bodily injuries. Deposition of Almerico Nittolo of September 11, 1981, at 45. However, to contradict that testimony defendants introduced records from Northern Westchester Hospital, Exhibit E to the Affirmation of Franklin N. Meyer of November 6, 1981, where plaintiff had received treatment immediately after being struck on the shoulder by a falling box while at work. Those records reflected that Mr. Nittolo had told a physician that he had a history of a pinched nerve in his lower back, that he had had back pain for four or five days, and that the back pain had become worse. Moreover, those records contain a drawing of the back area and indicate the precise location of the lower back pain complained of.

At the hearing plaintiff testified that he had not disclosed the work related injury at his deposition because, in his view, it was insignificant.[7] Tr. at 25 and 27. Further, he flatly denied ever having suffered from a pinched nerve. *Id.* at 37. While he admitted that the drawing in question was a

---

**6.** When questioned on that point later in the hearing, Mr. Nittolo claimed he could not remember what he had told Dr. Kantha. Tr. at 48–49.

**7.** Plaintiff first testified that the box only grazed his shoulder. *Id.* at 33. Later he claimed that he was struck in the back. *Id.* at 38. Plaintiff's employment records indicate that he was out of work for 2 days as a result of the accident. Meyer Affirmation at 6.

drawing of his back, he testified that, when the examining physician was taking his history, he thought the doctor was asking for information about his father and grandfather. *Id.* at 37. The Court finds Mr. Nittolo's testimony in this regard incredible.[8]

Finally, at the hearing, plaintiff admitted that he had willfully lied at his deposition with respect to his prior employment history. When asked by the Court whether he had ever worked for his brother-in-law, the following colloquy ensued:

THE COURT: Did you work for Mr. Senatore or not?

THE WITNESS: Yes, I did, your Honor.

THE COURT: Why didn't you mention that fact at your deposition?

THE WITNESS: I really didn't remember. Mr. Meyer wanted to know from day one what kind of work I did. I couldn't remember every—he asked me construction, your Honor. I have worked for 90 construction companies.

THE COURT: But obviously working for a relative is not something that lightly escapes your memory.

THE WITNESS: Your Honor, believe me, it was not my intention to deceive.

THE COURT: Were you working off the books with Mr. Senatore? Is that the problem?

THE WITNESS: Quite honestly, yes. That is probably what the problem was.

THE COURT: Because it is hard for me to believe that you forgot it quite frankly.

THE WITNESS: I didn't your Honor. That is why when Mr. Meyer asked me [at the hearing] I immediately said, Yes, I did work for him . . . .

Tr. at 93–94.[9]

■ The discovery process is designed to give both parties a full and fair opportunity to obtain facts necessary to prepare for trial. *See Cine Forty-Second Theater Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062 (2d Cir.1979). During the course of discovery and again at the hearing on the motion to dismiss, Mr. Nittolo repeatedly gave false and evasive testimony. His stated reasons for taking his medical records are incredible, and his conduct in taking these records, coupled with the false and incredible explanations offered in support thereof, permit the inference that plaintiff was seeking to conceal or destroy material evidence. The Court therefore concludes that Mr. Nittolo deliberately engaged in a pattern of conduct designed to conceal facts and to prevent defendants from discovering and obtaining relevant evidence.

■ It is clear from *Penthouse International, Ltd. v. Playboy Enterprises, Inc.,* 663 F.2d 371 (2d Cir.1981), that parties who willfully obstruct discovery may suffer dismissal of their claims, not only as punishment for their own conduct, but also as a deterrent to others. On the basis of the facts and circumstances of this case, the Court concludes that the remedy of dismissal is appropriate.[10]

Nor is it of any moment that, notwithstanding plaintiff's obstructive efforts, the defendants were still able to obtain some of the true facts. The sanctions imposed by Rule 37 for obstructing or failing to comply with discovery procedures would be hollow indeed if they could be imposed only on

---

**8.** There are other inconsistencies in Mr. Nittolo's testimony. Another hospital record introduced into evidence indicates that Mr. Nittolo told an examining physician that he had had back surgery, but not a myelogram. Court's Exhibit 5. At the hearing, however, Mr. Nittolo testified that, while he had had a myelogram, he had never had back surgery. Tr. at 62–69.

**9.** Defendants' attorney learned of Mr. Nittolo's employment with Mr. Senatore through an unrelated employment application produced in discovery.

**10.** Defendants also contend that plaintiffs' counsel obstructed discovery by instructing his client and witnesses whom he did not represent not to answer questions put to them at depositions in violation of Fed.R.Civ.P. 30(c). Although a court may dismiss a plaintiff's claim for discovery abuses by his attorney, *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), there is no need to do so here. Plaintiff's own conduct is sufficient to warrant the dismissal of his claim.

those whose efforts at concealment proved to be successful. Plaintiff may not properly escape the consequences of his own wrongful conduct because the defendants were diligent and persistent enough to overcome the obstacles which he placed in their path.

There remains for discussion the impact of the Court's holding on Mrs. Nittolo's claim. Recent New York cases suggest that an action for loss of consortium or loss of services is purely derivative and stands or falls with the injured spouse's action, *Maidman v. Stagg,* 82 A.D.2d 299, 441 N.Y. S.2d 711 (2d Dep't 1981); see *Millington v. Southeastern Elevator Co.,* 22 N.Y.2d 498, 239 N.E.2d 897, 293 N.Y.S.2d 305 (1968). But *cf. Neeson v. Troy,* 29 Hun. 173 (3d Dep't 1883); *Berg v. Third Avenue R. Co.,* 89 N.Y.S. 433 (City Ct. of N.Y.1903). At the very least it is clear that, with respect to negligence cases, the culpable conduct of the injured spouse may defeat or reduce the recovery of the spouse seeking damages for loss of services. *Maidman v. Stagg,* 82 A.D.2d at 305–6, 441 N.Y.S.2d at 716. It follows that the culpable conduct of the spouse who fails to comply with discovery rules should also defeat a claim for loss of services especially where, as here, the spouse herself appears to have aided and abetted her husband's misconduct.[11] Accordingly the Court concludes that Mr. Nittolo's culpable conduct is properly attributable to his wife. Therefore, Mrs. Nittolo's claim also must be dismissed.

Defendants' motion to dismiss is granted. Costs and attorneys fees shall be assessed against plaintiffs.

SO ORDERED.

---

11. Mrs. Nittolo stated at her husband's deposition that Dr. Costa was dead, which was untrue. Deposition of Almerico Nittolo of September 11, 1981, at 56.