OPINION OF THE COURT
Edmund L. Shea, J.
Plaintiff moves to amend the complaint herein by adding seven additional causes of action numbered 49-55, five of *581 which seek punitive damages against the defendant Robertshaw Controls and Uni-Line Division as hereinafter enumerated:
Number 49: Plaintiff, as administratrix, for wrongful death predicated upon fraud.
Number 50: Plaintiff, as administratrix, for pain, suffering, medical and funeral expenses predicated upon fraud.
Number 51: Plaintiff, as an individual, sues in fraud for loss of consortium for 14 days between the accident and death.
Number 52: Plaintiff, as an individual, for her personal injury and property damages based on negligence, asserting damages by suffering shock, fright, and emotional harm by virtue of her presence at the scene, and by witnessing her husband’s injury.
Number 53: Plaintiff, as an individual, for her personal injury and property damages, with the cause of action predicated in warranty.
Number 54: Plaintiff, as an individual, for her personal injury and property damages, with the cause of action predicated in strict tort liability.
Number 55: Plaintiff, as an individual, for her personal injury and property damages, with the cause of action predicated in fraud.
In causes of action 51 through 55, punitive damages are sought in addition to compensatory damages.
As applicable to this motion, this action involves an explosion caused by an allegedly defective control on a gas hot water heater. The accident occurred on August 4,1977, and plaintiff’s decedent died on August 18, 1977, as a result of injuries he received in the explosion.
Defendant’s affidavit and memorandum in opposition address only so much of plaintiff’s motion to amend the complaint as relates to wrongful death, survival or derivative causes of action. Proposed causes of action 52 through 55 do not fall into these categories. These causes of action seek to recover for personal and property damage done to Mrs. Young individually. They are not dependent on any *582 injury done to her husband, as an action relying on wrongful death would be, except insofar as they allege shock, fright and emotional harm as a result of witnessing the injuries to her husband. They- allege property damage and personal psychological injury as a result of her presence in the home during the explosion, wholly apart from the damage done by witnessing the injuries to her husband.
There is no question that the plaintiff is entitled to recover for damages done to her property and, providing she offers sufficient relevant proof, she may be entitled to recover punitive damages. (7A Warren, NY Negligence, Punitive Damages, § 1.07.) Just as clearly, the plaintiff may recover for the mental trauma induced by the psychological impact of an explosion occurring in her home. (See Johnson v State of New York, 37 NY2d 378; Battalla v State of New York, 10 NY2d 237; 7A Warren, NY Negligence, Mental Suffering, § 2.02 et seq.) Should plaintiff be able to establish defendant’s alleged gross moral culpability and effort to deceive the public, she would appear to be entitled to punitive damages as in respect to her psychological injury as well. (See Walker v Sheldon, 10 NY2d 401; Gostkowski v Roman Catholic Church, 262 NY 320; 7A Warren, NY Negligence, Punitive Damages, § 1 et seq.)
However, it is the well-established rule in this State that “no cause of action lies for unintended harm sustained by one, solely as a result of injuries inflicted directly upon another, regardless of the relationship and whether the one was an eyewitness to the incident which resulted in the direct injuries.” (Tobin v Grossman, 24 NY2d 609, 611.) Tobin continues to be controlling authority on this question. (Lafferty v Manhasset Med. Center Hosp., 54 NY2d 277; Shaner v Greece Cent. School Dist., 51 AD2d 662.)
Uncontradicted on this motion is plaintiff’s allegation that only recently has it been learned that grounds exist for claiming punitive damages. The clear implication is that the failure to discover this information sooner is due to a consistent effort on defendant’s part to prevent release of the relevant information. Given the statutory prescription that leave to amend a pleading is to be freely given, the motion should certainly be granted, at least as to the proposed 52nd through 55th causes of action. (CPLR 3025, *583 subd [b].) These causes of action are to be limited to damages to plaintiff’s property and any mental trauma she has suffered as a result of the explosion, independent of her observation of the injuries to her husband. So much of the pleadings as relates to her observation of the injuries to her husband is to be stricken. (Lafferty v Manhasset Med. Center Hosp., supra; Tobin v Grossman, supra.)
The 55th cause of action requires further consideration as, together with causes of action 49 through 51, it rests on a novel theory of fraud. These causes allege that the public in general was defrauded by defendant Robertshaw and that the plaintiff was injured thereby. The defendant’s fraud is alleged to have been directed at both the public and a public entity charged with securing public safety, to wit, the Consumer Product Safety Commission (hereinafter CPSC). As a result of this fraud, the defective Unitrol 110 gas water heater control manufactured by Robertshaw was permitted to remain in the stream of commerce to the eventual injury of plaintiff and her decedent.
Plaintiff alleges, broadly, that defendant became aware of the life-threatening defect in the Unitrol 110 control shortly after it was manufactured and marketed in the mid-1950’s. Defendant’s internal memoranda, recently discovered by plaintiff, indicate that the defendant balanced the cost of an aggressive replacement program, with its attendant implication of liability in pending actions, against the cost of probably less effective but more indirect means of attempting to remove the Unitrol 110 control from use. One of defendant’s memorandum, as plaintiff’s exhibit B, explicitly notes that the latter course, which the defendant Robertshaw is alleged to have consistently followed, entailed a greater risk of continued loss of life, personal injury and property damage. Further, the defendant Robertshaw is alleged to have misled the CPSC as to the extent of the danger posed by this unit, despite a statutory and regulatory duty to disclose the full nature of the problem. (US Code, tit 15, § 2064; 16 CFR part 1115.) Plaintiff asserts that Robertshaw’s statements and actions constituted a fraud on the public and the public’s agent, the CPSC, which caused the injury to plaintiff and her decedent.
*584 In asserting a theory of fraud as a basis for recovery on these facts, plaintiff relies heavily on Butcher v Robertshaw Controls Co. (550 F Supp 692). In Butcher, the court held that an injured private individual had a statutory right to assert a private action for damages against a manufacturer that allegedly fraudulently failed to comply with a disclosure rule of the CPSC. (US Code, tit 15, § 2072, supra.) This ruling has been followed in plaintiff’s Federal action. (Young v Robertshaw Controls Co., 560 F Supp 288.)
The Butcher court (supra) also upheld, at the pleading stage, the plaintiffs’ assertion of causes of action sounding in fraud and deceit based upon Robertshaw’s alleged fraud on the public and the CPSC. Although acknowledging that plaintiffs were asserting a novel theory of fraud, the court read Maryland law together with generally recognized principles of fraud and deceit and concluded that, in light of the function of the CPSC, plaintiffs’ theory of liability was viable. In short, the court reasoned that the CPSC is a statutorily created agent of the public. Applying the familiar rule that a fraud on an agent is a fraud against his principal, the court concluded that an injured member of the public could assert a fraud cause of action based upon a manufacturer’s alleged misrepresentation to the CPSC.
The elements of a fraud and deceit action in New York are substantially the same as those required by Maryland law. (Compare Butcher v Robertshaw Controls Co., supra, at p 701, with 24 NY Jur, Fraud and Deceit, § 14.) Moreover, New York follows the rule that a principal can assert a cause of action in fraud based upon false representations made to his agent. (3 NY Jur 2d, Agency & Independent Contractors, § 271.) In reasoning akin to that utilized in Butcher, one New York court has viewed a doctor as an agent of his patient for purposes of assessing representations made as to the quality of a prescription drug. (Wechsler v Hoffman-La Roche, Inc., 198 Misc 540.)
New York case law contains instances wherein a third party, not directly involved in the fraud, but who suffered injury in consequence thereof, was allowed to recover on a theory of fraud. (Kuelling v Lean Mfg. Co., 183 NY 78; *585 Kennedy v Woolworth Co., 205 App Div 648; Wechsler v Hoffman-La Roche, Inc., supra; 24 NY Jur, Fraud & Deceit, § 200.)
The general rule is that one who sells or delivers an item knowing it to be dangerously defective in some hidden manner commits a wrong independent of his contract so that he may be liable to a third person who suffers an injury which may be reasonably contemplated to follow from the defendant’s fraud and deceit. (Kuelling v Lean Mfg. Co., supra; 24 NY Jur, Fraud and Deceit, § 200.) It is an insubstantial extension of this doctrine, and one squarely within the spirit of the principle enunciated, to observe that one who sells or delivers an item with a hidden defect which he subsequently discovers may be liable in fraud and deceit for failure to disclose his newly ' acquired knowledge. (Prosser, Torts [4th ed], § 106.) As was observed by the court in Wechsler: “[0]ne who misrepresents [or fails to disclose] for his gain and benefit, at the expense of human life, should be answerable in fraud for all the reasonable and foreseeable consequences of his deception.” (Supra, at p 541.)
The court holds that plaintiff, as an injured member of the public, may assert a private cause of action sounding in fraud for damages as a result of injuries attributable to Robertshaw’s alleged fraud upon the public and the CPSC. While plaintiff’s proof of causality may be difficult, that is an issue best left for the trial. In addition, as it is the rule in New York that punitive damages are recoverable in an action for fraud, especially where there is an element of public fraud, plaintiffs’ plea for punitive damages is permissible. (Walker v Sheldon, 10 NY2d 401, supra; J.G.S., Inc. v Lifetime Cutlery Corp., 87 AD2d 810; Reinah Dev. Corp. v Kaaterskill Hotel Corp., 86 AD2d 50.) Walker is especially pertinent in view of the allegations that Robertshaw coldly considered the costs of disclosure. The court asserted that fraud, being based on calculation, might be more effectively deterred by the possibility of punitive damages: “[T]hose who deliberately and cooly engage in a far-flung fraudulent scheme, systematically conducted for profit, are very much more likely to pause and consider the consequences if they have to pay more than the actual loss suffered by an individual plaintiff.” (Supra, at p 406.)
*586 As authorization, ratification and management involvement are all implicated by the facts alleged, Robertshaw’s status as a corporation does not insulate it from a possible award of punitive damages. (Gill v Montgomery Ward & Co., 284 App Div 36; 14 NY Jur, Damages, § 186; Restatement, Torts 2d, § 909.)
The final issue presented is whether the plaintiff, Mrs. Young, in her individual capacity, may assert a claim for punitive damages in an action wherein she seeks compensatory damages for loss of consortium. No reported case in New York State has explicitly decided this issue. (7A Warren, NY Negligence, Punitive Damages [1968, 1982 Pocket Parts], § 4.03.) The commentary in Warren’s Negligence observes that a spouse’s loss of consortium could be characterized as á direct injury warranting an award of punitive damages in the proper circumstances. However, the commentator concludes that it is more likely that the spouse will be viewed as suffering an indirect injury only and thereby be denied any possibility of a recovery for punitive damages. (Warren, op. cit.) Warren’s Negligence, like Robertshaw, draws upon authority relating to the loss of services of a child as the basis for this position. (Tidd v Skinner, 225 NY 422.)
The majority of cases reported nationally on this issue have held that only compensatory damages are recoverable for loss of consortium. (Punitive Damages-Spouse or Parents, Ann., 25 ALR3d 1416; 41 Am Jur 2d, Husband and Wife, § 455.) It has been said that “[i]t is at least arguable that a different rule should apply as to the loss of consortium, since in such an event the injury is directly to a personal interest or right of the plaintiff, and punitive damages are frequently allowed in other actions based upon a wilful or malicious injury to this right, as in actions for criminal conversation or alienation of affections.” (25 ALR3d 1416, 1418, n 3.)
Different courts, scholars and commentators have characterized the claim for loss of consortium as derivative, independent, dependent or indirect, direct, or personal to the spouse. (Millington v Southeastern Elevator Co., 22 NY2d 498; Liff v Schildkrout, 49 NY2d 622; Centelles v New York City Health & Hosps. Corp., 84 AD2d 826; *587 Maidman v Stagg, 82 AD2d 299; Osborn v Kelley, 61 AD2d 367; Fafard v Ajamian, 60 AD2d 853; Prosser, Torts [4th ed], § 125; 15 NY Jur, Domestic Relations, §§ 302-314.) The arbitrary and obscure nature of these characterizations, and the loose manner in which they are made, is illustrated by two decisions from the Second Department. Several months after asserting that New York courts had never recognized an independent claim for consortium, the Second Department stated that though derivative, a claim for consortium is a spouse’s independent claim. (Compare Maidman v Stagg, supra, at p 305 with Centelles v New York City Health & Hosps. Corp., supra, at p 827.) Clearly, characterizing a loss of consortium claim as derivative or indirect does little to aid analysis and only serves to evade the issue. (Cf. Millington v Southeastern Elevator Co., supra.) Characterization aside, what the courts have done is to limit the defendant’s liability to the period beginning with the injury and continuing to the death of the spouse (Liff v Schildkrout, supra; Osborn v Kelley, supra), and to permit the defendant to assert the other spouse’s comparative negligence against the consortium plaintiff (Maidman v Stagg, supra). None of this necessarily precludes the consortium plaintiff from recovering punitive damages for malicious or reckless injury to his interest in the continuation of a healthy and happy marital life.
Punitive damages are intended to punish a party who acts with malice or with such a reckless disregard for the rights of others that an inference of malice is permitted. The award is also intended to deter others from so acting. The award is based, in part, upon a consideration of the need to protect the public from such conduct. The likelihood of recovery is greatly enhanced if the wrong is public in nature. (Walker v Sheldon, supra; 14 NY Jur, Damages, §§ 176-190; 7A Warren, NY Negligence, Punitive Damages, § 1 et seq.) If plaintiff can prove her allegations, all of the traditional elements of punitive damages will come into play and the usual purposes asserted in favor of making the award will be met.
Punitive damages have been made available in a wide variety of circumstances. (Walker v Sheldon, supra [fraud]; Le Mistral, Inc. v CBS, 61 AD2d 491, app dsmd 46 NY2d *588 940 [trespass]; Rimbaud v Beiermeister, 168 App Div 596 [injury to a dog]; Joyner v Merrill School, 97 Misc 2d 568 [consumer fraud]; 14 NY Jur, Damages, §§ 180-182; 7A Warren, NY Negligence, Punitive Damages, § 1.07.) As a general rule punitive damages are available in all actions ex delicto involving the necessary elements of malice or recklessness. (14 NY Jur, Damages, § 180.) It is often said that it is not the form of the action or the particular tort committed that determine the availability of punitive damages. Rather it is the moral culpability of the defendant, his motives in acting, which will indicate whether punitive damages should be awarded or not. (Walker v Sheldon, supra; Prosser, Torts [4th ed], § 2; 14 NY Jur, Damages, § 179.)
Instead of characterizing consortium in some arbitrary manner, if the court looks to the alleged moral culpability of the defendant in injuring this plaintiff’s marriage, punitive damages ought to be available if she can prove her allegations. Certainly, the interest in the continuation of a happy and healthy marital life is no less worthy of such protection than other interests. The Court of Appeals has described the consortium interest as including much more than the loss of services at issue in Tidd (supra): “The concept of consortium includes not only loss of support or services, it also embraces such elements as love, companionship, affection, society, sexual relations, solace and more.” (Millington v Southeastern Elevator Co., 22 NY2d, at p 502.) The court then asserted: “Consequently the interest sought to be protected is personal to the wife * * * To describe the loss as ‘indirect’ is only to evade the issue.” (Supra, at p 503.) To paraphrase Millington (supra), is a spouse’s personal interest in the continuation of the marital relationship free from harm less worthy of the protection of punitive damages than an individual’s interest in keeping his property free from trespass or his dog free from injury?
The court holds that the plaintiff may assert a claim for punitive damages in her action for fraud wherein she seeks compensatory damages for loss of consortium. (Butcher v Robertshaw Controls Co., supra; 25 ALR3d 1416.)
*589 In sum, the motion to amend the complaint by adding causes of action 49 through 55 is granted. The words “and by virtue of witnessing her husband’s injury” and the word “both” are to be deleted from the third paragraph of causes of action numbered 52 through 55.
Plaintiff’s amended complaint is to be served within 10 days of entry of the order to be issued herein. An answer is to be served within 20 days of service of the amended complaint. (CPLR 3025, subd [d].)