Pam **MAYO, Individually and as next friend of Kent and Jeremy Mayo, her minor children, Plaintiff-Appellant,**

v.

**TRI–BELL INDUSTRIES, INC., Defendant-Appellee.**

No. 84–5010.

United States Court of Appeals, Fifth Circuit.

April 21, 1986.

---

Darrell Panethiere, Dallas, Tex., for plaintiff-appellant.

Sam R. Cummings, Culton, Morgan, Britain & White, Amarillo, Tex., for defendant-appellee.

Before GOLDBERG, HILL and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

We address in this appeal the application of the Texas modified comparative negligence statute, Tex.Rev.Civ.Stat.Ann. art. 2212a, to state wrongful death claims, where the survivor plaintiffs seek damages for nonpecuniary losses, specifically loss of consortium, loss of society and mental anguish. After careful review of state case law, we conclude that the statute is equally as applicable to nonpecuniary as to pecuniary loss claims. Accordingly, we hold that the trial court properly refused to enter judgment on the jury's award of all damages, pursuant to art. 2212a, because the deceased's negligence exceeded that of the tortfeasor.

## FACTUAL BACKGROUND

This appeal arises from a 1982 collision between two trailer tractors on a highway in Texas, in which both drivers, Joe Mayo and David Sullivan, were killed. The Texas plaintiffs are Mayo's wife, Pam, and her minor children, Jeremy and Kent Mayo, who brought a wrongful death action against Sullivan's employer, Tri-Bell Industries, Inc., a Montana corporation. The jury found that Mayo was 55 percent negligent and Sullivan 45 percent negligent. The jury awarded $300,000 to Mrs. Mayo for her pecuniary losses of maintenance and support, as well as nonpecuniary damages for mental anguish and loss of consortium, and $250,000 and $225,000, respectively to Jeremy and Kent Mayo for pecuniary losses, as well as mental anguish and loss of society. The trial court refused to enter judgment in favor of the survivors because of the jury's finding that Mayo's negligence exceeded that of Sullivan. The

survivors appeal the denial of recovery for nonpecuniary damages; they do not contest the apportionment of negligence.

## ANALYSIS

1. *Interplay of Wrongful Death and Comparative Negligence Statutes*

■ The Texas wrongful death statute, Tex.Rev.Civ.Stat.Ann. art. 4672,[1] provides in pertinent part:

> The wrongful act, negligence ... must be of such character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury.

This court, in *Delesma v. City of Dallas*, 770 F.2d 1334, 1338 (5th Cir.1985), recently surveyed state case law on wrongful death claims and concluded that the Texas courts have, in an undeviating line, characterized the action on behalf of the decedent's family as a purely derivative one:

> [A] wrongful death claim derives wholly from the cause of action that the decedent could have asserted for personal injuries had he lived. The survivors thus occupy the decedent's legal shoes. Any defense that would have defeated a personal injury claim during his lifetime likewise vanquishes their claims.

Texas courts have construed the state modified comparative negligence statute, art. 2212a,[2] to bar recovery by survivors in a wrongful death action, where the deceased's negligence is greater than the al-

leged tortfeasor's. *Velasquez v. Livingston*, 598 S.W.2d 346, 349 (Tex.Civ.App.— Corpus Christi 1980, no writ); *New Terminal Warehouse Corp. v. Wilson*, 589 S.W.2d 465, 470 (Tex.Civ.App.—Houston [14th Dist.] 1979), writ ref'd n.r.e., 605 S.W.2d 855 (Tex.1980); *see also Folsom Investments, Inc. v. Troutz*, 632 S.W.2d 872, 876 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.).

■ This appeal concerns the more specific related question whether the nonpecuniary claims for loss of consortium/society[3] and mental anguish, judicially created by the Texas Supreme Court, are also barred by the state comparative negligence statute. Neither parties' nor our research has unearthed a state court opinion that is dispositive of the issue.[4] However, sufficient precedent as to the relevant components of the issue does exist, enabling us, as an *Erie* court sitting in diversity, to decide the issue as a Texas court would.

Mrs. Mayo first contends that in fashioning the nonpecuniary loss remedies, the Texas Supreme Court, in effect, has created causes of action that are separate and distinct from the wrongful death action, and as such they escape the reach of art. 2212a. She relies upon holdings such as *Graham v. Franco*, 488 S.W.2d 390 (Tex. 1972) (a husband's negligence may not be imputed to bar a wife's separate property recovery), and *Gulf Production Co. v. Quisenberry*, 128 Tex. 347, 97 S.W.2d 166

---

1. Effective September 1, 1985, the Texas legislature repealed the Wrongful Death Act, arts. 4671 *et seq.* and recodified it in Texas Civil Practice and Remedies Code, §§ 71.001 *et seq.* Article 4671 is now § 71.003(a). The recodification made no substantive change in the Act. *See id.* at § 1.001.

2. Art. 2212a § 1 provided:

   *Contributory negligence shall not bar recovery in an action by any person or party or the legal representative of any person or party to recover damages for negligence resulting in death or injury to persons or property if such negligence is not greater than the negligence of the person ... against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of*

negligence attributed to the person or party recovering.

*See* § 33.001, Texas Civil Practice and Remedies Code, for the current version of the statute.

3. For the sake of conciseness and simplicity, we discuss the nearly identical claims for loss of consortium and society in tandem. *See Air Florida, Inc. v. Zondler*, 683 S.W.2d 769 (Tex. App.—Dallas 1984, no writ).

4. *See, e.g., Missouri Pacific R. Co. v. Vlach*, 687 S.W.2d 414, 416 (Tex.App.—Houston [14th Dist.] 1985, writ filed), where the trial court, like the trial court here, reduced the survivors' award of both pecuniary and nonpecuniary damages in proportion to the decedent's contributory negligence. The issue, however, was not raised before the appellate court.

(1936) (a parent's negligence is not imputable to a child so as to bar the child's recovery for the child's personal injuries). In support of her position, Mrs. Mayo also points to language from the case where the Texas Supreme Court created the loss of consortium remedy, *Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex.1978) ("the consortium action is ... independent and apart from that of the impaired spouse's negligence action"), and to a holding in *City of Denton v. Page*, 683 S.W.2d 180, 206 (Tex. App.—Fort Worth 1985), *rev'd on other grounds*, 701 S.W.2d 831 (Tex.1986), where the appellate court treated a mental anguish claim as non-derivative.

We do not find the nonpecuniary loss remedies asserted here to constitute separate causes of action. The first two cases cited by Mrs. Mayo, *Graham* and *Gulf Production* and their progeny, are distinguishable, because in each case, the third party is seeking to recover for personal injuries that are not derived from the injuries of the plaintiff who was contributorily negligent, but which are separate and distinct injuries inflicted directly upon the third party by the tortfeasor.[5] The distinction is illustrated by the recent *Williams v. Steves Indus., Inc.*, 678 S.W.2d 205, 210 (Tex.App.—Austin 1984), *aff'd*, 699 S.W.2d 570 (Tex.1985), where the court reduced the recovery for the loss of society of the mother, as the driver of the car in the collision where her children were killed, in proportion to *her* contributory negligence. By contrast, the court awarded the father, whose claim for loss of society derived from his non-negligent children's death pursuant to the wrongful death statute, full recovery.

Mrs. Mayo's selective quotation from *Whittlesey* does injustice to the complete statement made by the court:

Finally, while the deprived spouse's suit for loss of consortium is considered to be

derivative of the impaired spouse's negligence action to the extent that the tortfeasor's liability to the impaired spouse must be established, the consortium action is, nevertheless, independent and apart from that of the impaired spouse's negligence action.

572 S.W.2d at 667 (citations omitted). In *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 738 (Tex.1980), a case where a wife sought to recover for negligent loss of consortium from her husband's employer for her husband's physical injuries, the Supreme Court dispelled any possible ambiguity:

In *Whittlesey*, we ... characterized the wife's [loss of consortium] action as being *derivative* of the tortfeasor's liability to her husband for his physical injuries ... (court's emphasis).

The *Reed* court went on to explain that because loss of consortium is derivative, the beneficiary must, as a prerequisite, establish liability on the tortfeasor's part, and "a defense that tends to constrict or exclude" that liability "will have the same effect on [her] consortium action" 610 S.W.2d at 738–39. Even in *City of Denton*, 683 S.W.2d at 206, the appellate court, following *Reed*, reduced the wife's award for loss of consortium by the 15 percent negligence attributable to her husband.

With regard to the mental anguish claim, however, the *City of Denton* court, 683 S.W.2d at 206, without citing authority, essayed a different approach:

Mental anguish is an injury separate and apart from that suffered by an injured spouse. It might well be possible that the injured spouse's suit against the tortfeasor could be barred and yet the spouse suffering mental anguish could still recover against such tortfeasor. We find that a cause of action for mental anguish is not derivative and any recovery will not be constricted by the injured spouse's contributory negligence.

---

**5.** *Graham* abolished the interspousal immunity defense before enactment of the comparative negligence statute, and therefore can be interpreted as an effort to mitigate the harsh consequences of the former contributory negligence regime. It disallowed recovery by the wife for

medical expenses, which were held to be community property. Narrow as is its holding, *Graham* neither foreshadows nor compels the conclusion that spousal and family grief, defined as loss of consortium/society and mental anguish, should be treated as separate causes of action.

We note that another appellate court, in *Dawson v. Garcia,* 666 S.W.2d 254, 260 (Tex.App.—Dallas 1984, no writ), has reached the opposite conclusion, holding that the survivors' mental anguish claim is derivative. In *Dawson,* the court applied art. 2212a to bar recovery in a bystander's action for mental pain and anguish brought by the widow and children of the decedent who had been found 75 percent contributorily negligent. The court reasoned that, absent primary liability of the tortfeasor for the victim's death, no derivative right of recovery was available to the survivors.

We believe that the mental anguish holding in *City of Denton* is a tenuous, alien graft on a sturdy framework of Texas law mandating the opposite conclusion. Article 4671 creates a cause of action for "actual damages on account of the injuries causing the death...." In *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983), where the Texas Supreme Court for the first time allowed the recovery of damages for loss of companionship and mental anguish, it was not creating independent causes of action, but interpreting the Texas wrongful death statutes "in light of present social realities" and expanding "recovery beyond the antiquated and inequitable pecuniary loss rule." 651 S.W.2d at 251. Nothing in *Whittlesey* or *Sanchez* or their progeny indicates that a claim for loss of consortium/society or mental anguish should be treated any differently from pecuniary losses in the wrongful death context.

Mrs. Mayo's second principal contention is that, although art. 2212a relieves a defendant from liability if he is less negligent than the plaintiff, the defendant is not relieved of fault as to the third party by the concluding words of art. 2212a, "any damages allowed shall be diminished in proportion to the amount of negligence *attributed to the person or party recovering*" (emphasis added). A literal reading of the portion quoted, she urges, renders art. 2212a inapplicable because there was no finding of fault on her or her children's part.

We find this proffered construction unsatisfying for several reasons. It erroneously implies that art. 2212a creates a cause of action on behalf of those who are responsible for zero negligence, such as Mrs. Mayo and her children, apart from their rights under the wrongful death statute. However, the quoted phrase refers to the "damages recoverable" and thus, like the provision read in its entirety, applies only to calculate damages on behalf of anyone who already possesses a legally cognizable cause of action. Moreover, Mrs. Mayo's construction, carried to its logical conclusion, would afford every person who was responsible for zero negligence, but arguably could assert damage, an action against a tortfeasor. If this were true, such unlikely causes of action as one on behalf of Mr. Mayo's employer for the damages incurred in having to hire and retrain a replacement driver would be litigable. We think that the Texas legislature could not have intended such potentially far-reaching consequences from adoption of a comparative negligence standard for apportionment of damages.

Mrs. Mayo's suggested interpretation would skew Texas law from an already definable path. Prior to the adoption of a modified comparative fault scheme with the passage of art. 2212a in 1973, a Texas plaintiff's contributory negligence, in any degree, prevented recovery in a tort action. Under that common law rule, Texas courts also barred recovery of the survivors for pecuniary losses in a wrongful death action, where the decedent was found contributorily negligent. *Lofton v. Norman,* 508 S.W.2d 915, 922 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.); *Mitchell v. Akers,* 401 S.W.2d 907 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r.e.). Subsequent to the passage of art. 2212a, Texas courts routinely applied the statute to bar or reduce pecuniary losses in wrongful death actions. *Velasquez; New Terminal Warehouse Corp.* It is only logical to extend that approach to include nonpecuniary damages. This has been the conclusion of the majority of the comparative negligence jurisdictions that have considered the issue in

the context of loss of consortium. *See, e.g., Eggert v. Working,* 599 P.2d 1389 (Alaska 1979); *Nelson v. Busby,* 246 Ark. 247, 437 S.W.2d 799 (1969); *Hamm v. City of Milton,* 358 So.2d 121 (Fla.Dist.Ct.App. 1978); *Runcorn v. Shearer Lumber Products, Inc.,* 107 Idaho 389, 690 P.2d 324 (1984); *Maidman v. Stagg,* 82 A.D.2d 299, 441 N.Y.S.2d 711 (N.Y.1981); *Scattaregia v. Shin Shen Wu,* 343 Pa.Super. 452, 495 A.2d 552 (1985); *White v. Lunder,* 66 Wis.2d 563, 225 N.W.2d 442 (1975). In those minority comparative negligence jurisdictions that have not reduced the plaintiff's damages for loss of consortium by the percentage of negligence attributed to the negligent spouse, it has been because, unlike Texas, they do not consider the loss of consortium to be a derivative source of damages. *See, e.g., Lantis v. Condon,* 95 Cal.App.3d 152, 157 Cal.Rptr. 22 (1979); *Brann v. Exeter Clinic Inc.,* 498 A.2d 334 (N.H.1985); *Feltch v. General Rental Co.,* 383 Mass. 603, 421 N.E.2d 67 (1981). We believe that Texas courts have amply indicated that they will side with the majority view on this point.[6]

2. *Evidentiary Rulings*

■ ·Mrs. Mayo also contends that the trial court's rulings on two evidentiary matters so prejudiced her case that reversal is warranted. Her first complaint concerns the trial court's allowing Tri-Bell's principal expert witness, Dr. Mike James, to testify over objection by her counsel that he had been precluded, by circumstances purportedly beyond his control, from deposing James. Counsel contends that inclement weather prevented him from flying to Amarillo the morning of James's scheduled deposition, and that the trial court improperly denied a motion for continuance and quashed counsel's supplemental notice to depose James. Control of discovery is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or

clearly unreasonable. *Dukes v. South Carolina Ins. Co.,* 770 F.2d 545, 548–49 (5th Cir.1985); *Perel v. Vanderford,* 547 F.2d 278, 280 (5th Cir.1977); *Scroggins v. Air Cargo, Inc.,* 534 F.2d 1124, 1133 (5th Cir.1976).

■ The motion for continuance reveals that Mrs. Mayo's counsel, in seeking to justify his absence from the deposition, initially informed the trial court that "*all* flights from Dallas to Amarillo were cancelled" on the deposition date (emphasis added). At trial, when Mrs. Mayo's counsel objected to James's testimony, the court overruled ΄ the objection, stating that "flights were leaving Dallas on that [day]". Counsel thereupon retreated from his earlier global statement, and contended that his particular flight was cancelled that day. Nothing in the record indicates weather conditions that day in Dallas. However, we need not resort to the *Farmer's Almanac,* nor opine whether Mrs. Mayo's counsel could have attempted alternate routes, or even whether he could have taken part in the deposition by telephone, because Mrs. Mayo has eviscerated her argument by failing to show how her cause was prejudiced by not having deposed James. It is clear from the record that counsel for Mayo's employer, then a party similarly situated to Mrs. Mayo in the suit, took part in the deposition; the transcript was made available to her counsel before trial; and her counsel's cross-examination of James was substantial and included James's deposition testimony. James's deposition was never made part of the record, thus barring any appellate review of the existence, let alone the degree, of any harm that may have been visited upon her case. We cannot say, on the record as it appears before us, that the trial court abused its discretion.

■ Dr. James also figures in Mrs. Mayo's second contention of evidentiary er-

---

**6.** Our disposition of this issue renders it unnecessary to address Mrs. Mayo's related substantive contentions regarding whether an equitably adopted child is a legal beneficiary under the wrongful death statutes or whether recovery for mental anguish must be predicated on a showing of physical injury.

ror, which stems from the trial court's refusal to exclude his testimony along with that of another defense expert witness. At trial, potential witnesses, with the court-approved exemption of the expert witnesses, were placed under the rule, in accordance with Fed.R.Evid. 603, 615(3) and 703. Mrs. Mayo contends that the rule was violated when, during trial, defense counsel had lunch with several witnesses, including the two experts, at which evidence in the case was discussed. Mrs. Mayo asserts that one fact witness testified one way before the lunch discussion, and when he afterwards resumed the stand, testified in a different vein on the same issue. On appeal, however, Mrs. Mayo complains only of the trial court's failure to exclude the experts' subsequent testimony.

We conclude that the trial court properly allowed the defense's expert witnesses to testify. Fed.R.Evid. 703 provides that an expert may base his opinion on facts or data obtained "at or before the hearing." As experts they would be testifying solely as to their opinion based on the facts or data in the case, and, accordingly, were properly exempted from the exclusion of witness order. *See, e.g., Morvant v. Constr. Aggregates Corp.*, 570 F.2d 626, 629–30 (6th Cir.), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 44, 58 L.Ed.2d 94 (1978). Because the experts were not witnesses whose recollections might have been colored by accounts of prior witnesses, there was no prejudice. *See, e.g., Trans World Metals, Inc. v. Southwire Co.*, 769 F.2d 902, 910–11 (2d Cir.1985).

AFFIRMED.